# NELSON *v.* UNITED STATES.
# BOSSARD *v.* SAME.
# McNAIR *v.* SAME.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MINNESOTA.

Nos. 490, 491, 492. Argued January 5, 8, 1906.—Decided March 12, 1906.

In a suit in the Circuit Court of the United States brought by the United
States against corporations for violations of the Anti-trust Law of July 2,
1890, a witness refused to answer questions or submit books to inspec-
tion before an examiner appointed by the court on the ground of im-
materiality, also pleading the Fifth Amendment; after the court had
overruled the objections and directed him to answer he again refused
and judgment in contempt was entered against him. On appeal to
this court *held,* that:

Questions under the Constitution of the United States were involved and
this court has jurisdiction of an appeal direct from the Circuit Court.

In such an action the books of the various defendants both before and
after the alleged combination, and the contracts between them, as well
as other papers referred to in the opinion, are all matters of material
proof, but whether material or not the testimony must be taken and
exceptions can be noted by the examiner and the materiality of the evi-
dence passed on by the court.

Witnesses cannot take objections to materiality of evidence in order to be
relieved from testifying. The tendency or effect of the testimony on
the issues between the parties is no concern of theirs.

Documentary evidence in the shape of books and papers of corporations
are in the possession of the officers thereof, who cannot refuse to produce
them on the ground that they are not in their possession or under
their control.

*Hale* v. *Henkel, ante,* p. 43, followed to the effect that officers and em-
ployés of corporations cannot, under the Fourth and Fifth Amend-
ments, refuse to testify or produce books of corporations in suits against
the corporations for violations of the Anti-trust Law of July 2, 1890,
in view of the immunity given by the act of February 25, 1903.

THESE writs of error submit for review a judgment in con-
tempt entered in the case of *United States* v. *General Paper
Company,* described in *Alexander* v. *United States, post,* p. 117.
The judgment was based upon the disobedience by the plaintiffs
in error to orders of the court requiring them to answer certain

questions and to produce certain books, documents and papers in their examination before the special examiner in pursuance to a *subpœna duces tecum* duly issued and served. The orders requiring the plaintiffs to answer were made upon petition of the United States, which exhibited the issues in the suit of *United States* v. *General Paper Company et al.,* stated the questions asked plaintiffs in error, and the books, documents and papers required of them.

Plaintiffs in error refused to obey the orders, and the examiner reported their disobedience to the court "for such action as the court might take for the further enforcement of its orders." In defense plaintiffs in error filed separate answers, which respectively alleged that Nelson was the president and manager of the Hennepin Paper Company; Brossard, manager and treasurer of the Itasca Company, and McNair, a director and general manager of the Northwest Paper Company. In other particulars the answers are identical except so far as the relations of plaintiffs in error to their respective corporations made a difference. Plaintiffs in error are also directors of the General Paper Company. We insert the answer of Nelson in the margin.[1]

---

[1] Now comes Benjamin F. Nelson and answering the order to show cause made in the above-entitled matter on the 15th day of September, A. D. 1905, and the petition heretofore filed in said matter by said complainant upon which said order to show cause was made, alleges and shows unto the court as follows:

That this respondent is a director and the president of Hennepin Paper Company, one of the defendants in the above-entitled matter, and is also the owner and holder of stock in said company of the par value of forty-nine thousand ($49,000.00) dollars, and that the books and papers referred to in said order to show cause and in the petition and schedules thereto attached, upon which said order to show cause was made, are the books and papers of said Hennepin Paper Company and not of this respondent, and are subject to the control of said Hennepin Paper Company and not of this respondent; that this respondent is also a director of General Paper Company, another of the defendants in the above entitled matter, and the owner and holder of stock in said General Paper Company of the par value of two thousand two hundred and fifty dollars; that said Hennepin Paper Company and said General Paper Company have objected and do object, and

The court required the questions to be answered and the books and documents to be produced and, being of opinion that the order did not constitute a final decision, refused to allow an appeal on the part of either of the plaintiffs in error or either of

this respondent has objected and does object, to the production of said books and papers for inspection by counsel for said complainant for the purpose of being offered in evidence in said cause. Said objections are based upon the following reasons:

1. That the materiality of said books and papers in the case mentioned in said order to show cause now pending in said court has not been established so as to authorize a court of equity to order their inspection, production and introduction in evidence, and that the same are not material, relevant or competent evidence in said cause; that said books and papers contain matters of importance relating to the business of said Hennepin Paper Company and said General Paper Company in no way bearing upon or touching the issues in said cause, which it would be highly injurious to the business interests of both of said companies to make public, and this respondent submits that he ought not to be required to disclose any portions of said books or papers except on a proper showing that the same are material to said cause to establish some issue therein, and a showing that the same are not privileged for the protection of the defendants above named.

2. That one of the purposes of said complainant in instituting said cause and in making the requests mentioned in said order to show cause for the inspection, production and introduction as evidence of said books and papers, is to establish and to compel said Hennepin Paper Company and said General Paper Company, and this respondent as such director or officer of each of said defendants, to furnish to said complainant evidence tending to establish that said Hennepin Paper Company and said General Paper Company have been guilty of certain violations of the act of Congress entitled "An act to protect trade and commerce against unlawful restraints and monopolies," approved July 2, 1890, and the acts amendatory thereof or supplemental thereto, and to subject said Hennepin Paper Company and said General Paper Company to the penalties for such violations imposed by said act, and that to compel the production by said Hennepin Paper Company or said General Paper Company, through their officers or otherwise, of said books and papers for inspection and introduction as evidence in said cause, would be contrary to the provisions of the Fifth Amendment to the Constitution of the United States, which provides that no person shall be compelled in any criminal case to be a witness against himself, and also contrary to the provisions of the Fourth Amendment to the Constitution of the United States, which provides that the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.

3. That the alleged acts of said Hennepin Paper Company complained

the defendants in the suit or on the part of all of them jointly.

Plaintiffs in error refused to obey the order of the court, and upon the report of the examiner the judgment under review was

---

of by said complainant in its said original petition or bill of complaint in said cause, and which said complainant is endeavoring to establish in said cause, would, if committed by said Hennepin Paper Company, be violations of the laws of the State of Minnesota, and would subject said Hennepin Paper Company to forfeiture of its charter and other penalties under said laws; that to compel said Hennepin Paper Company, through this respondent as one of its officers or otherwise, to produce said books and papers for inspection and introduction as evidence in said cause would be to compel it to furnish evidence tending to establish that it has been guilty of such acts and subject it to the forfeiture of its charter and other penalties aforesaid, contrary to the provisions hereinbefore mentioned of the Fourth and Fifth Amendments to the Constitution of the United States.

4. That in addition to the matters above set forth, the purpose of the complainant in instituting said cause and in making the requests mentioned in said order to show cause is to obtain from said court a decree enjoining said General Paper Company from carrying on the business for which it was incorporated, and to enjoin the carrying out of and operation under certain agency contracts and agreements existing between it and said Hennepin Paper Company, on the alleged ground that said contracts and agreements were made and are in violation of the provisions of said act of Congress; that said contracts and agreements are of great value, not only to said General Paper Company whose entire business practically rests upon them, but are also of great value to and constitute valuable property rights in each of the defendants respectively parties thereto, including the said Hennepin Paper Company, and that such injunction from carrying out said contracts and agreements and their virtual annulment thereby occasioned would result in great injury, damage or loss, not only to said General Paper Company but also to said Hennepin Paper Company and to this respondent as a stockholder in each of said companies; and that to compel the production by said Hennepin Paper Company or said General Paper Company, or either of them, through this respondent as such director or officer or otherwise, of said books and papers for inspection and introduction as evidence in said cause for the purpose aforesaid, would be contrary not only to the provisions of said Fourth and Fifth Amendments to the Constitution of the United States, but also contrary to the well established rule of the common law, as well as of equity jurisprudence, that no person will be compelled to discover any fact, either by producing documents or answering questions, which may subject him, either directly or eventually, to prosecution for a crime or to a forfeiture or penalty, or anything in the nature of a forfeiture or penalty.

entered, fining plaintiffs in error severally $100 "for their said disobedience of the said order, said fines to be paid to the clerk of this court for the use of the United States, as punishment for such contempt," and sentencing them to be imprisoned until

Further answering, this respondent alleges and shows unto this court that all the matters concerning which the questions referred to in said petition and schedules thereto annexed were asked, and which this respondent refused to answer, as stated in said petition, came to this respondent's knowledge exclusively as president and a director of said Hennepin Paper Company, or as a director of said General Paper Company, in the conduct of matters entrusted to him as such director or president, and which said companies, from the nature of the case, were compelled to entrust to this respondent as such director or officer, and that said Hennepin Paper Company and said General Paper Company have objected and do object, and this respondent has objected and does object, to said questions and to his being required to answer the same, for reasons similar to those already set forth in respect to the production, inspection and introduction in evidence of the books and papers above mentioned, that is to say:

1. That the materiality of said questions in the cause above mentioned has not been established so as to authorize a court of equity to order them to be answered, and that the same are not material, relevant or competent evidence in said cause.

2. That the purpose of said complainant in instituting said cause and in asking said questions is to establish and to compel said Hennepin Paper Company and said General Paper Company, through this respondent as such director or officer, to furnish to said complainant evidence tending to establish that said Hennepin Paper Company and said General Paper Company have been guilty of certain violations of the acts of Congress above referred to, and to subject them to the penalties for such violations imposed by said acts, and that to compel said defendants hereinbefore named, or either of them, through this respondent, to answer said questions would be contrary to the provisions hereinbefore referred to of said Fourth and Fifth Amendments to the Constitution of the United States.

3. That the alleged acts of said Hennepin Paper Company complained of by said complainants in its original petition or bill of complaint in said cause, and which said complainant is endeavoring to establish in said cause, would, if committed by it, be violations of the laws of the State of Minnesota, and would subject it to forfeiture of its charter and other penalties under said laws; that to compel it through this respondent to answer the questions aforesaid would be to compel it to furnish evidence tending to establish that it has been guilty of such acts and subject it to the forfeiture of its charter and other penalties aforesaid, contrary to the provisions hereinbefore referred to of said Fourth and Fifth Amendments to the Constitution of the United States.

the order of the court requiring them to testify should be complied with.

The questions on the merits in these cases are the same as those on the merits in *Alexander* v. *United States, post,* p. 117,

---

4. That in addition to the matters above set forth, the purpose of the complainant in instituting said cause and in asking the questions mentioned in said order to show cause is to obtain a decree enjoining said General Paper Company from carrying on the business for which it was incorporated and to enjoin the carrying out of and operation under certain agency contracts and agreements existing between it and said Hennepin Paper Company, on the alleged ground that said contracts and agreements were made and are in violation of the provisions of said acts of Congress; that said contracts and agreements are of great value not only to said General Paper Company, whose entire business practically rests upon him, but are also of great value to and constitute valuable property rights in each of the defendants respectively parties thereto, including the Hennepin Paper Company, and that such injunction from carrying out said contracts and agreements and their virtual annulment thereby occasioned would result in great injury, damage and loss, not only to said Hennepin Paper Company or said General Paper Company, and that to compel said Hennepin Paper Company or said General Paper Company, through this respondent, to answer the questions aforesaid in aid of the purposes aforesaid would be contrary not only to the provisions hereinbefore referred to of said Fourth and Fifth Amendments to the Constitution of the United States, but also contrary to the well established rule of the common law as well as of equity jurisprudence, that no person will be compelled to discover any fact, either by producing documents or answering questions, which may subject him, either directly or indirectly, to prosecution for a crime or to a forfeiture or penalty or anything in the nature of a forfeiture or penalty.

Further answering this respondent alleges that he ought not to be required to answer the questions or comply with the requests, or produce for inspection by counsel for the complainant or for the purpose of being offered in evidence the cause above referred to, the books and papers referred to in said order to show cause and in the petition and schedules thereto annexed, upon which said order to show cause was made, not only for the reasons hereinabove set forth, but also for the following reasons, that is to say:

1. That one of the purposes of said complainant in instituting said cause and in seeking to require this respondent to answer the questions and comply with the requests and produce for inspection by counsel for the complainant, and for the purpose of being offered in evidence in said cause the books and papers aforesaid, is to establish and to compel this respondent to furnish to said complainant evidence tending to establish that he has been guilty of certain violations of the acts of Congress hereinbefore mentioned and referred to, and to subject him to the penalties for such violations im-

decided this day. In those cases, however, this court had no jurisdiction and the appeals were dismissed. In the present cases we have jurisdiction, *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, and directly from the Circuit Court, as questions under the Constitution of the United States are involved.

posed by said acts, and that to compel him to answer said questions or comply with said requests or to produce for inspection or for the purpose of being offered in evidence in said cause the said books and papers would be contrary to the provisions hereinbefore referred to of said Fourth and Fifth Amendments to the Constitution of the United States.

2. That the alleged acts of said Hennepin Paper Company and of said General Paper Company complained of by the complainant in its said original petition or bill of complaint in said cause, and which said complainant is endeavoring to establish in said cause, would, if committed by said defendant companies, involve certain violations of the laws of the State of Minnesota by this respondent, and would subject him to penalties and forfeiture under said laws, and that to compel him to answer the questions or comply with the requirements aforesaid, or to produce for inspection, or for the purpose of being offered in evidence in said cause, the said books and papers, would be to compel him to furnish evidence tending to establish that he has been guilty of such violations of the laws of the State of Minnesota and to subject him to the penalties and forfeitures aforesaid, contrary to the provisions hereinbefore referred to of said Fourth and Fifth Amendments to the Constitution of the United States.

3. That one of the purposes of said complainant in instituting said cause and in seeking to require this respondent to answer the questions and comply with the requests, and produce for inspection by counsel for the complainant and for the purpose of being offered in evidence in said cause, the books and papers above referred to, is to establish and compel this respondent to furnish to said complainant evidence tending to establish the allegations of the original petition or bill of complaint in said cause, which, if established, will result in subjecting this respondent to loss or detriment in the nature of a penalty or forfeiture, in that the said Hennepin Paper Company, of which this respondent is a stockholder as aforesaid, will be subjected under the laws of the State of Minnesota to the forfeiture of its charter, resulting in the virtual forfeiture of the stock of this respondent in said defendant company, and to be the loss and forfeiture to a large extent of the value of the interest of this respondent in said corporation, and in that the contracts made through said General Paper Company as its sales agent by said Hennepin Paper Company under and pursuant to the agency contracts herein referred to between said Hennepin Paper Company and said General Paper Company will be virtually annulled and the property rights of said Hennepin Paper Company in said contracts destroyed; that there are a large number of such contracts outstanding under which

In the pleadings in the original suit brought in the Circuit Court of the United States for the District of Minnesota it is respectively alleged and denied that the defendant corporations, of which plaintiffs in error are officers, had entered into an agreement, combination and conspiracy to control, regulate and monopolize not only the manufacture of newsprint and other papers, but the distribution and shipment thereof through the Middle, Southern and Western States, in violation of the Anti Trust Act of July 2, 1890. The United States sought to establish by plaintiffs in error the truth of the charge, and the subpœna served upon them was explicit as to what was required of them.

The subpœnas required plaintiffs in error to produce the account books, including the journals, ledgers and other books kept by or under the control of the companies respectively, of which plaintiffs in error were respectively officers, (*a*) showing the amounts, kinds and grades of paper manufactured by the respective companies and sold by or through the General Paper Company, and were shipped since the fifth of July, 1900; (*b*) the prices, amounts or credits received for such paper from the paper company between the fifth of July and the present time, including entries, showing the manner in which the prices and amounts received by the respective companies for any and all

---

large sums of money are due to said Hennepin Paper Company, all of which, as this respondent is advised and believes, will be or may be forfeited and lost to said defendant and to this respondent as a stockholder therein in case the illegal combination alleged in said original petition or bill of complaint is established by the decree or judgment in said cause; and this respondent alleges that to compel him to answer the questions and comply with the requests and produce for inspection and for purpose of being offered in evidence the books and papers referred to in said order to show cause and the petition and schedules aforesaid, and which he has declined to answer and comply with or produce, if material to said cause, would be contrary to the provisions of said Fourth and Fifth Amendments to the Constitution of the United States, and also contrary to the well established rule of the common law and of equity jurisprudence, that no person will be compelled to discover any fact or matter which may subject him to forfeiture or penalty or anything in the nature of a forfeiture or penalty.

of its products so sold have been equalized with the prices and amounts received or realized of any and all of the other defendant companies for which the paper company is or has been the exclusive agent; (c) the amounts and proportions of earnings or profits of the paper company received by the respective companies from and through the paper company, either in the form of rebates, credits or otherwise.

Second: All contracts, agreements, writings and account books, including journals, ledgers and other books, kept by or under the control of the respective companies, showing the agreement, arrangement or understanding under and pursuant to each, and the manner in which the prices and amounts realized by the respective companies upon the various kinds and grades of paper manufactured by it and sold by and through the paper company, are and have been, since July 5, 1900, equalized, or the profits arising from the sale of such paper distributed or apportioned, as between the respective companies and other defendants manufacturing and selling through the paper company similar kinds or grades of paper, or among all of the defendants manufacturing similar kinds or grades of paper, and then and there to testify and the truth to say, in a certain matter in controversy in said court, between the United States as complainant against the General Paper Company et al., defendants, on the part of the complainant.

There is no uncertainty, therefore, either in the issue or the means of proof. In other words, the United States charges a conspiracy upon the part of the defendant corporations for the cessation of competition between the manufacturing defendants by creating a general selling and distributing agent, the General Paper Company, which restricts the output of the mills, fixes the prices of their products, determines to whom, and the terms and conditions upon which, such products shall be sold, into what States and places they shall be shipped, and what publishers and customers each mill shall supply. The means of proof of the charge are obviously the conditions of the companies before and after the formation of the paper company,

its organization and the purpose of its organization, the means of its operation, how and by what means it equalizes the output and price of products, and the distribution of the proceeds of their sale, and the relations and accounts between it and the other defendant companies, and their books, accounts and minutes of proceedings.

The questions were directed to these ends. They were directed to ascertain whether the prices received for the various paper materials were equalized, and whether during the time the General Paper Company was the selling agent of the materials there was in existence an arrangement whereby the prices received through the paper company were equalized between the other defendant companies. The questions were put in various ways to show such equalization and the arrangements to equalize, and to show the allowances to each mill, the fixing of definite prices, and the distribution of the balances received among the companies on the basis of their average daily output of the grade of paper inquired about. And there were also questions asked as to whether the board of directors or the executive committee of the paper company fixed the prices of paper to be paid to each of the mills by or through the paper company, and the compensation to be paid to the mills making butchers' fibre paper, because it was less profitable, and other questions as to conversations between gentlemen representing the different mills in regard to the organization of a corporation to act as general selling agent in order to eliminate competition. There were also questions as to whether the books showed the things expressed in the other questions. The objection made to each of the questions before the examiner was that the testimony sought was irrelevant, incompetent and immaterial, and counsel advised the witnesses not to answer. As to the books and papers the following is a sample of the proceedings:

"Q. Do the books, journals or ledgers of the Hennepin Paper Company show any agreement or arrangement or understanding under and pursuant to which and the manner in which the prices and amounts realized by the Hennepin Paper Company

upon various grades of paper manufactured by it and sold by or through the defendant the General Paper Company, are and have been, since the 5th day of July, 1900, equalized or the profits arising from the sale of such paper distributed or apportioned as between the defendants?

"MR. FLANDERS: All objections renewed, and I give the witness the same advice.

" (No answer.)

"Q. Do you refuse, Mr. Nelson, to produce the books?

"MR. FLANDERS: As I said before, you may assume for the purposes of these questions that the books and all the papers called for are present in court, but on behalf of the Hennepin Paper Company and the witness and the General Paper Company I decline to submit those to the inspection of the Government counsel.

"MR. KELLOGG: Or to allow them or any part of them to be put in evidence, Mr. Flanders?

"MR. FLANDERS: Yes."

Other facts will appear in the opinion.

*Mr. James G. Flanders;* with whom *Mr. Charles F. Fawsett* and *Mr. William Brace* were on the brief, for plaintiffs in error in these cases and for appellants in Nos. 381, 382, 383, 384, and 385 argued simultaneously herewith.[1]

The evidence, documentary and oral, which the witnesses were required to produce was not shown to be material to plaintiff's case.

The documentary evidence called for is the property of the General Paper Company or some other of the defendant corporations. The proceeding, therefore, is a method of compelling the production of books and documents belonging to parties to the suit, and it is governed by the rules prescribed for the protection of parties from whom a discovery is demanded.

The right of a plaintiff in equity to the benefit of a defendant's oath is limited to a discovery of such material facts as relate

---

[1] *Alexander* v. *United States, post,* p. 117.

to the plaintiff's case and does not extend to a discovery of the manner in which, or of the evidence by means of which, the defendant's case is to be established.   1 Daniell's Ch. Pl. & Pr. 5 Am. ed. *579, 580; Wigram's Law of Discovery, 1st Am. ed. 15; Story's Eq. Pl. §§ 565, 568.

The plaintiff must show by clear averment the materiality of the documents sought to be disclosed.   This rule applies to proceedings under a statute to compel production upon or in preparation for trial.   23 Am. & Eng. Ency. of Law, 176; *Owhyee L. & I. Co.* v. *Tautphaus,* 109 Fed. Rep. 547; *Condict* v. *Wood,* 25 N. J. L. 319; *Bank* v. *Mansfield,* 48 Illinois, 494; *Lester* v. *People,* 150 Illinois, 408; *Bentley* v. *People,* 104 Ill. App. 353; *Wynn* v. *Taylor,* 109 Ill. App. 603; *Walsh* v. *Press Co.,* 48 App. Div. N. Y. 333; *S. F. Copper M. & R. Co.* v. *Humphrey,* 111 Fed. Rep. 772; *Eschbach* v. *Lightner,* 34 Maryland, 528, 533; *Jenkins* v. *Bennett,* 40 S. Car. 393, 400; *Berry* v. *Matthews,* 7 Georgia, 457, 462, 463.

A plaintiff's right to any compulsory production of books is strictly limited to such documents as contain evidence relevant to his case.   His right to inspect is never larger than his right to read in evidence.   The defendant is not compelled to discover his evidence if it cannot tend to establish affirmatively the case of the plaintiff.   Hare on Discovery, 187, 198; *Compton* v. *Earl Gray,* 1 Y. & J. 154; *Bolton* v. *Liverpool,* 3 Sim. 489; *S. C.,* 1 My. & K.; *Harris* v. *Harris,* 3 Hare, 450; *Van Kleeck* v. *Ref. Dutch Ch.,* 6 Paige, 600; *S. C.,* 20 Wend. 458.

Before the plaintiff is entitled to the production of a given document he must show *aliunde* that its contents are such as to entitle him to read it in evidence.   He cannot compel production in order to prove that he is entitled to production. Wigram's Law of Discovery, § 293; *Story* v. *Lennox,* 1 Myl. & Cr. 534; Langdell on Eq. Pl. § 164; *Bligh* v. *Benson,* 7 Price, 205; *Stroud* v. *Deacon,* 1 Vesey, 27; *Barnett* v. *Noble,* 1 Jacob & W. 227.

Any party who is required to produce his books of account or other documents, may seal such portions thereof as he swears

contain nothing relating to the purposes of the discovery sought, and his affidavit that the parts so sealed do not relate to the matters in litigation is sufficient protection.    23 Am. & Eng. Ency. of Law, 182; 2 Wait's Pr. 548; *Titus* v. *Cortelyou*, 1 Barb. 444; *Robbins* v. *Davis*, 1 Blatch. 238, 242; *Campbell* v. *French*, 2 Cox Ch. Cas. 286; *Girard* v. *Penswick*, 1 Wilson Ch. 222; *Pynchon* v. *Day*, 118 Illinois, 9.

Under Rev. Stat. § 724 it has been held that production will only be ordered where a discovery would be decreed under the same circumstances in chancery.    *Jacques* v. *Collins*, 2 Blatch. 23.    See *Caspary* v. *Carter*, 84 Fed. Rep. 416; *Birchoffsheim* v. *Brown*, 29 Fed. Rep. 341; *Ryder* v. *Bateman*, 93 Fed. Rep. 31; *Bloede Co.* v. *Bancroft & Sons Co.*, 98 Fed. Rep. 175; *Boyd* v. *United States*, 116 U. S. 616.

The doctrine is not confined to documentary evidence.    It applies also to the case of oral testimony.    The materiality of any question must be made to appear before a witness can be required to answer it and before he can be adjudged guilty of a contempt of court for a refusal to answer.    The leading case is *In re William Judson*, 3 Blatch. 148.    See also *In re Allis*, 44 Fed. Rep. 216; *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447.

The evidence, documentary and oral, required to be produced, if material to the plaintiff's case, is in the nature of incriminating evidence which the witnesses and the defendants are privileged from furnishing to the plaintiff under the Fourth and Fifth Amendments of the Federal Constitution and the well recognized principles of equity procedure.

The discovery which by the orders appealed from the witnesses are required to make, might also tend to subject them to penalties and forfeitures under the laws of the State of Wisconsin.    Wisconsin Statutes (1898), §§ 1747*e*, 1747*h;* *Counselman* v. *Hitchcock*, 142 U. S. 547; *United States* v. *Saline Bank*, 1 Pet. 100.

It is not within the province of Congress to suspend the operation of these state statutes or to interfere with their enforce-

ment in their relation to trade within the State, and therefore the immunity clause would be ineffectual to relieve the appellants against liability under the state law.

The jurisdiction of state authority over trade within the State is as exclusive and unqualified as the jurisdiction of Congress over trade between the States. *Addyston Pipe Co.* v. *United States,* 175 U. S. 211 (where injunction previously issued was modified to make it conform to this rule); *Allen* v. *Pullman Co.,* 191 U. S. 171; *National Cotton Oil Co.* v. *Texas,* 197 U. S. 115.

It is the settled law of this court that the Fifth Amendment has no application to state courts and their proceedings under state laws. *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *Brown* v. *Walker,* 161 U. S. 591, distinguished.

These Amendments to the Constitution were merely declaratory of the equity and common law rules of evidence, and it was firmly settled by them at the time of the adoption of the Amendments that no person could be compelled to discover any fact, either by producing documents or answering questions, which might subject him either directly or eventually to liability to a penalty or forfeiture, or anything in the nature of a penalty or forfeiture. 1 Daniell's Chancery Pleading & Practice, 5th Am. ed. * 562, 563; 2 Story's Eq. Jur. § 1494; 1 Pomeroy's Eq. Jur. 202; *Livingston* v. *Harris,* 3 Paige, 527; aff'd 11 Wend. 329; *Northrop* v. *Hatch,* 6 Connecticut, 361, 363; *Livingston* v. *Tompkins,* 4 Johns. Ch. 432, and cases there cited; *Vanderveer* v. *Holcomb,* 17 N. J. Eq. 91; *United States* v. *National Lead Co.,* 75 Fed. Rep. 94; *Newgold* v. *American Electrical &c. Co.,* 108 Fed. Rep. 341; *United States* v. *Boyd,* 116 U. S. 631.

The consequences which must result to the appellants from the passing of the decree prayed for in the complaint are in the nature of a forfeiture. They should not be required to furnish the evidence to subject them to such forfeiture. 13 Am. & Eng. Ency. of Law, 54.

The witnesses were entitled to decline to answer not only on

the ground of personal privilege, but also on the ground that their answers would be the answers of the General Paper Company and the other defendants whose officers and directors they were, and might tend to subject said defendants to fines, penalties and forfeitures and to loss or damage in the nature of a forfeiture. A corporation is a person and as such entitled to the privileges and immunities of persons. *Covington Turnpike Co.* v. *Sanford,* 164 U. S. 578. It performs its functions only through its officers and agents and they cannot be compelled to testify. *State* v. *Simmons Hardware Co.,* 15 L. R. A. 676; *Davis* v. *Lincoln Natl. Bank,* 4 N. Y. Supp. 373; *Bank of Oldtown* v. *Houlton,* 21 Maine, 502.

The orders are appealable under the judiciary act of March 3, 1891, and under the act of February 11, 1903, to expedite the determination of suits in equity under the Anti Trust Act and the Interstate Commerce Act.

In appealing from the order of the Circuit Court appellants have followed the practice indicated in the two cases of *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, and *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25. In each case it was held that the application by the Interstate Commerce Commission made a "case" and that the order denying the application was a final order and therefore appealable.

The two cases cited differ from the present ones only in this: that no action was there pending in any Circuit Court to which the proceedings to compel the testimony of witnesses and the production of books and papers could be said to be ancillary. Otherwise, however, the proceeding itself was in every substantial respect the same as that adopted in the present cases.

The words "final decree" have been given a liberal and reasonable construction as respects the right of appeal. *Eau Claire* v. *Payson,* 107 Fed. Rep. 552.

There may be more than one final order and more than one appeal in the same suit. *Trustees* v. *Greenough,* 105 U. S. 527; *Tuttle* v. *Claflin,* 88 Fed. Rep. 122; *Rouse* v. *Letcher,* 156 U. S. 47.

These proceedings are not properly incidental, but collateral, having a distinct and independent character. They belong to the class known as ancillary, in which the form is determined by the circumstances of each case. So far as the question of appealability goes, they are subject to the same rules as original and independent actions. *Krippendorf* v. *Hyde*, 110 U. S. 276, 280, 287; *Freeman* v. *Howe*, 24 How. 450, 460; *Christmas* v. *Russell*, 14 Wall. 69, 80; *Rouse* v. *Letcher*, 156 U. S. 47, 50; *Stewart* v. *Dunham*, 115 U. S. 61, 64; *Carey* v. *Houston &c. Ry. Co.*, 161 U. S. 115, 126; *Pope* v. *Louisville &c. Ry. Co.*, 173 U. S. 573.

The present proceedings have all the distinguishing characteristics of any suit in equity or action at law.

The test of finality as to any particular order, under the decisions of this court, is this: An order, to be appealable, or final for the purposes of appeal, must be conclusive upon the merits and must leave the matter in controversy in such a condition that if there be an affirmance here the court will have nothing to do but to execute the order it has already entered. *Bostwick* v. *Brinkerhoff*, 106 U. S. 3; *St. L. &c. R. Co.* v. *Southern Expr. Co.*, 108 U. S. 24; *Winthrop I. Co.* v. *Meeker*, 109 U. S. 180; *Mower* v. *Fletcher*, 114 U. S. 127; *Trustees* v. *Greenough*, 105 U. S. 527.

It has been held that the final order or decree in ancillary proceedings is governed by the same rules, in respect of appeals to the Supreme Court, as the decree in the principal suit. *Pope* v. *Louisville &c. Ry. Co.*, 173 U. S. 573; *Carey* v. *Houston &c. Ry. Co.*, 161 U. S. 115; *Rouse* v. *Letcher*, 156 U. S. 47.

If, however, there is any question whether the act of February 11, 1903, applies to appeals in such cases as the present, there can be no doubt of the right of appellants to obtain a review of the orders appealed from by direct appeal to the Supreme Court under the provisions of section 5 of the act of March 3, 1891. *Loeb* v. *Township Trustees*, 179 U. S. 472; *W. U. Tel. Co.* v. *A. A. R. R. Co.*, 178 U. S. 239; *Penn. Mut. L. Ins. Co.* v. *Austin*, 168 U. S. 685.

*Mr. Frank B. Kellogg* and *Mr. James M. Beck,* Special Assistants to the Attorney General, with whom *The Attorney General* was on the brief, for the United States in these cases and in Nos. 381, 382, 383, 384 and 385:

Whether finally admissible or not, the evidence should be given and received before the examiner, inasmuch as all questions of materiality, relevancy and competency must be left primarily for determination upon final hearing by the United States Circuit Court for the District of Minnesota where the cause is pending, and ultimately for decision by this court when the suit shall be considered here on appeal. *Blease* v. *Garlington,* 92 U. S. 1.

Had the witnesses, instead of appealing from the order and taking a writ of error from the judgment of contempt, sued out a writ of *habeas corpus,* this court would have had jurisdiction on appeal from a judgment discharging the writ. *Ekiu* v. *United States,* 142 U. S. 651; *Horner* v. *United States,* 146 U. S. 120. And it is only the question of the validity of the judgment overruling their plea under the Constitution that can be considered. *In re Tyler,* 149 U. S. 164; *In re Lennon,* 166 U. S. 552. A writ of error from the judgment of contempt will bring up no other question. *Bessette* v. *Conkey Co.,* 194 U. S. 324.

The rule in *Blease* v. *Garlington* has been followed in numerous cases. *In re Allis,* 44 Fed. Rep. 216, *contra,* is not in point, and it does not appear that *Blease* v. *Garlington* was called to the attention of the judge deciding the case.

, The evidence was material and admissible. Where the existence of the books and papers desired is established, the ability to produce them is shown, and the books and papers are apparently important and material to the case of the moving party, their production will be required. It is obviously impossible in applications of this character to determine the materiality of all of the contents of the books and papers in advance. *United States* v. *Babcock,* Fed. Cas. No. 14,484; *Coit* v. *North Carolina, Gold &c. Co.,* 9 Fed. Rep. 577.

There is no doubt that as a witness a party can be compelled

by a *subpœna duces tecum* to produce books, documents and papers in his possession in the same manner as any other witness. *Bischoffsheim* v. *Brown*, 29 Fed. Rep. 341, 343. And the officers of a corporation may be required as witnesses to produce its books when the books are necessary evidence. *Wertheim* v. *Continental Ry. & Trust Co.*, 15 Fed. Rep. 716; *Johnson Steel Street-rail Co.* v. *North Branch Steel Co.*, 48 Fed. Rep. 196; *Edison Electric Light Co.* v. *U. S. Electric Ltg. Co.*, 44 Fed. Rep. 294; *S. C.*, 45 Fed. Rep. 55; *Johnson Co.* v. *North Branch Co.*, 48 Fed. Rep. 191.

Under issues of the character raised in this cause, the entire manner of conducting the business of the General Paper Company is competent and material evidence. *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25.

The claim of privilege is solely a personal one. Wigmore on Evidence, §§ 2195–2210; *Brown* v. *Walker*, 161 U. S. 597.

These witnesses cannot claim the privilege of silence either under the general principles of common law and equity jurisprudence and procedure, or under the Fourth and Fifth Amendments.

It is true that under the ancient practice in actions at common law a party might not compel his opponent to furnish evidence as a witness. His only remedy was by way of a bill of discovery in equity. Wigmore on Evidence, §§ 2217, 2218. This limitation, however, never existed in equity. 1 Greenleaf on Evidence, 15th ed. § 361; 1 Daniells on Ch. Prac. 5th ed. 885, note 6; Adams on Equity, 7th ed. 36; Wigmore on Evidence, §§ 2218, 2219, pp. 3012, 3014–3016.

A party will be compelled to make a disclosure of all facts within his knowledge, or books and documents in his possession, which tend either to establish his opponent's case or to refute the position which he himself takes. *Bustaes* v. *White*, Eng. Law Rep. Q. B. Div. 423; *Atty. Gen.* v. *Emerson and another*, Law Rep. 10 Q. B. Div. 191; *Arnold* v. *Pawtuxet Valley Water Co.*, 18 R. I. 189.

Modern legislation has made the bill of discovery an unnec-

essary adjunct even in actions at law. Material evidence may now be required of a party in such actions, without resorting to this cumbersome proceeding. 1 Pomeroy on Eq. Jur. 2d ed. § 193; Wigmore on Evidence, § 2219; 14 and 15 Victoria, c. 99, § 6; Rev. Stat. of Wisconsin (1898), § 4183, as amended by c. 244, Laws of 1901; Rev. Stat. § 858.

The guaranty of the Fifth Amendment that no person shall be compelled in a criminal case to be a witness against himself does not protect corporations. *Brown* v. *Walker,* 161 U. S. 591; *Interstate Com. Com.* v. *Baird,* 194 U. S. 25; *Morgan* v. *Halberstadt,* 60 Fed. Rep. 592; *N. Y. Life Ins. Co.* v. *People,* 195 Illinois, 430; *State* v. *Jack,* 69 Kansas, 387.

In so far as the penalty or forfeiture may be criminal in its character the guaranty of the Fifth Amendment applies, and is entirely saved by the immunity statute; in so far as the penalty or forfeiture is other than criminal, in so far as it involves the loss or forfeiture of the claim to a continued violation of the laws of the land, there is no principle either of constitutional law or of equity jurisprudence which may be invoked to relieve against it.

It was settled at an early date that pecuniary loss to the witness was not one of the penalties or forfeitures intended to be protected against by the Constitution. See opinion of Chief Justice Shaw in *Bull* v. *Loveland,* 10 Pick. 9, which has been followed uniformly by all of the courts in the United States. 1 Greenleaf on Evidence, 15th ed. § 452; *Lowney* v. *Perham,* 20 Maine, 240; *Ward* v. *Sharp,* 15 Vermont, 115; *Harper* v. *Borough,* 6 Ired. 30; *Robinson* v. *Neal,* 21 Kentucky, 212.

It is also held that a penalty of forfeiture must be penal in its nature, as distinguished from pecuniary loss suffered as a consequence of civil liability. *Boyd* v. *United States,* 116 U. S. 616; *Lees* v. *United States,* 150 U. S. 476; *Huntington* v. *Attrill,* 146 U. S. 657; *Brady* v. *Daly,* 175 U. S. 148; *City of Atlanta* v. *Chattanooga Foundry & Pipe Co.,* 101 Fed. Rep. 900; *State* v. *Jack,* 69 Kansas, 387; *State* v. *Standard Oil Co.,* 61 Nebraska, 28; *Southern Ry. Co.* v. *Bush,* 122 Alabama, 470; *Levy* v. *Supe-*

*rior Court,* 105 California, 600; *Ames* v. *Kansas,* 111 U. S. 449; 3 Wigmore on Evidence, § 256; 2 Beach on Private Corporations, § 840.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

Plaintiffs in error urge three main contentions, which we will consider in their order.

I. That the evidence, documentary and oral, which the witnesses were required to produce, was not shown to be material to plaintiff's case.

1. There are three answers to this contention. (1) The evidence is clearly material. The charge of the bill is that the defendant manufacturing corporations entered into a conspiracy and combination in violation of the act of July 2, 1890, to suppress competition between themselves, and that they accomplished this purpose by organizing the General Paper Company, and gave it certain controlling powers over the output of the mills and the prices and distribution of their products.

Before the application to the court for the orders under review there were certain facts established. It was established that in the fall of 1889 and the spring of 1900 there were preliminary meetings of the parties to ultimately form the paper company, and that it was subsequently formed by those representing the manufacturing companies, who subscribed for the stock. In July, 1900, the corporations as represented in the paper company, fourteen in all, entered into contracts with it, making it their exclusive selling agent; that each constituent manufacturing company was represented by one of its principal officers upon the board of directors of the paper company, and the number of directors have been increased as other corporations have made the paper company their selling agent. A table of the constituent companies was given and the times the companies became members of the paper company. And it was established that there was an executive committee, comprised

substantially of the same persons who constituted the board of directors, and that the paper company had books and records containing the minutes of the meetings of stockholders, directors and the executive committee, and that the treasurers and sales agents had presented reports to the stockholders, directors and executive committee. It was stipulated that all the subscriptions to stock of the paper company were for the benefit of some paper manufacturing company and in its name, that it was the beneficial owner thereof, and that the dividends declared thereon were its property; that said stock was from time to time allotted to such corporations as made contracts with the paper company, making it their exclusive selling agent upon the basis of estimated relative productions of paper. A list of the individuals to whom stock was issued, the names of the corporations represented by them, and the days of the issuances of the stock were given.

The questions were framed to prove the combination charged in the bill, and the powers and operation of the General Paper Company and the relations of the other companies to it. What the answers will show we do not know, nor what the books and documents will disclose. The organization of the paper company had a purpose, and whether it was a legal or illegal instrument for competing companies to use we do not have now to determine. By the admissions of the answers the paper company entered into contracts with those companies, became their selling agent, and was entitled to a certain percentage of the sales. Presumably it exercised its powers, made sales and received profits. In all that it did the manufacturing corporations were interested; they owned its stock, were entitled to its dividends. This we may admit for argument's sake, not prejudging in any way, may be consistent with continued competition between the companies, but it may be otherwise. At any rate, the manner in which the paper company executed its functions may be links in the evidence adduced by the United States, and this is enough to establish the materiality of the evidence.

It must not be overlooked that not only an inspection of the

books was refused, but questions directed to ascertain the contents of the books were objected to, not answered. We have given one illustration; we will give another. Counsel for defendant corporations stated at the examination: "That for the purpose of any question the Government counsel see fit to ask it may be assumed that all the books, papers and documents" described in the subpœna "are present here in court, and we decline to submit them to the inspection of the Government counsel." The following then took place:

"Q. State whether those books show the amounts, kinds or grades of paper manufactured by the defendant Northwest Paper Company and sold by or through the defendant General Paper Company as the exclusive sales agent of the defendant Northwest Paper Company since the 8th day of April, 1902, or since about the 1st of May, 1902, if that is the date the business commenced.

"Same objections by defendants, and the witness given the same advice.

"Q. You decline to answer?

"A. I decline on advice of attorney.

"Q. Do the books also show where the said paper so manufactured was sold and into what States and Territories it was shipped since the 8th day of April, 1902, or the 1st day of May, 1902?

"MR. FLANDERS: I wish to make the same objections, and I give the witness the same advice.

"A. Same answer."

And counsel for the United States, not only as to the matters expressed in the foregoing questions, but as to other matters which the bill charged against the companies, and which had been inquired about, said, that he desired to use the books and offer them in evidence to show such matters. An inspection of the books was refused, and all evidence of their contents withheld.

Necessarily the books contained the information. The paper company was the selling agent of the Northwest Paper Com-

pany and must have kept an account of its sales and into what States the paper of the company was shipped and sold. Such accounts are material and relevant to complainant's case. They may or may not, in connection with other evidence, sustain the charge of the United States, but they are elements in the proof, having tendency enough to sustain the charge to be considered material.

2. The claim of immateriality of the testimony cannot avail plaintiffs against the orders of the Circuit Court. The procedure before an examiner and his powers are explained in *Blease* v. *Garlington*, 92 U. S. 1. It is there said: "The examiner before whom the witnesses are orally examined is required to note exceptions; but he cannot decide upon their validity. He must take down all the examination in writing, and send it to the court with the objections noted. So, too, when depositions are taken according to the acts of Congress or otherwise, under the rules, exceptions to the testimony may be noted by the officer taking the deposition, but he is not permitted to decide upon them; and when the testimony, as reduced to writing by the examiner, or the deposition, is filed in court, further exceptions may be there taken. Thus both the exceptions and the testimony objected to are all before the court below, and come here upon the appeal as part of the record and proceedings there."

And an application to a court to compel the delivery of testimony in aid of the examination does not change the rule. The testimony is taken to be submitted to the court where the suit is pending and all questions upon the evidence, its materiality and sufficiency, are to be determined by it and after it by an appellate court. Even if the trial court permit the examination of witnesses orally in open court upon the hearing in cases in equity, as further said in *Blease* v. *Garlington*, the testimony must be taken "down or its substance stated in writing and made part of the record, or it will only be disregarded here on an appeal. So, too, if testimony is objected to and ruled out, it must still be sent here with the record subject to the objec-

tion, or the ruling will not be considered by us." *Blease* v. *Garlington* has been applied at Circuit in a number of cases.[1]

3. These writs of error are not prosecuted by the parties in the original suit, but by witnesses, to review a judgment of contempt against them for disobeying orders to testify. Being witnesses merely, it is not open to them to make objections to the testimony. The tendency or effect of the testimony on the issues between the parties is no concern of theirs. The basis of their privilege is different from that and entirely personal, as we shall presently see.

II. That the documentary evidence called for was not shown to be in the possession or under the control of the witnesses. This contention is untenable. The ground of it is that the possession of the witnesses was not personal, but was that of the respective corporations of which they were officers. Granting this to be so and that the witnesses could have set up whatever privileges the corporations had, nevertheless they had the custody (actual possession) of the books and were summoned from necessity as representing the corporations. It is hardly necessary to observe that the witnesses had all the possession human beings could have had or can have, and if the objection is to prevail the books of a corporation can be withdrawn from the reach of compulsory process.

It is as useless as attempting to demonstrate that twice two make four, to say that a corporation can have possession of nothing except by the human beings who are its officers, and it is to them, not the intangible being they represent and act for,

---

[1] *Thomson-Houston Elec. Co.* v. *Jeffrey Mfg. Co.*, 83 Fed. Rep. 614; *Maxim-Nordenfelt Guns & Am. Co., Ltd.*, v. *Colt's Patent Firearms Mfg. Co.*, 103 Fed. Rep. 39; *Parisian Comb Co.* v. *Eschwege*, 92 Fed. Rep. 721; *Fayerweather* v. *Ritch*, 89 Fed. Rep. 529; *Appleton* v. *Ecaubert*, 45 Fed. Rep. 281; *Edison Elec. Lt. Co.* v. *U. S. Elec. Ltg. Co.*, 45 Fed. Rep. 55, 59; *Johnson Steel Street Rail Co.* v. *North Branch Steel Co.*, 48 Fed. Rep. 196; *Adee* v. *J. L. Mott Iron Works*, 46 Fed. Rep. 39; *Lloyd* v. *Pennie*, 50 Fed. Rep. 4; *Brown* v. *Worster*, 113 Fed. Rep. 20; *MacWilliam* v. *Conn. Web. Co.*, 119 Fed. Rep. 509; *Whitehead & Hoag Co.* v. *O'Callahan*, 139 Fed. Rep. 243.

that the law directs its process of subpœna and must procure its evidence.

III. That the evidence, documentary and oral, required to be produced, was in the nature of incriminating evidence which the witnesses and the defendants are privileged from furnishing to the plaintiff under the provisions of the Federal Constitution and the well recognized principles of equity procedure.

This contention asserts rights personal to the plaintiffs and rights of the corporation defendants in the suit. The basis of both rights is the protection of the Fourth and Fifth Amendments to the Constitution of the United States.

The argument submitted is substantially the same as that made by appellants in *Hale* v. *Henkel* and *McAlister* v. *Henkel*. It is insisted that the immunity [1] given by the act of February 25, 1903, is not as broad as the penalties and forfeitures to which the plaintiffs in error or the corporations of which they are officers will be subjected. If the immunity, it is urged, protects from the penalties of the Anti Trust Act of 1890 it does not protect, nor has Congress the power to protect, from the penalties of the Minnesota laws, which make criminal a combination and conspiracy in restraint of trade and subject to forfeiture the charters of corporations who become parties to such combination and conspiracy. Sections 6955, 6956, 5962, Statutes of Minnesota, 1894.

The extent of the immunity and its application to corporations was considered in *Hale* v. *Henkel* and *McAlister* v. *Henkel*, and decided adversely to the contention of plaintiffs in error.

*Judgment affirmed.*

---

[1] "Provided, that no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit or prosecution under said acts: Provided further, that no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying." Act February 25, 1903; Comp. Stats., Sup. 1903, pp. 366, 367.