### ORVIG DAMPSKIBSELSKAP ACTIESELSKABET v. NEW YORK & BERMUDEZ CO. et al.

### ACTIESELSKABET NEPTUN v. SAME.

(District Court, E. D. New York. August 18, 1915.)

WITNESSES ⬤306—CONSTITUTIONAL PRIVILEGE—CORPORATIONS—"PERSON."

A corporation is not a "person," within the meaning of the word as used in Const. U. S. Amend. 5, and cannot refuse to answer interrogatories attached to a libel in admiralty on the ground that its answers may tend to incriminate it.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1058–1060; Dec. Dig. ⬤306.

For other definitions, see Words and Phrases, First and Second Series, Person.]

In Admiralty. Suit by the Orvig Dampskibselskap Actieselskabet and by the Actieselskabet Neptun against the New York & Bermudez Company and the Hamburg-Amerikanische Packetfahrt Actien Gesellschaft. On objection by the second defendant to answering certain interrogatories attached to the libel. Objection overruled.

Ralph James M. Bullowa, of New York City, for libelants.

Haight, Sandford & Smith, of New York City (Edward Sandford and Wharton Poor, both of New York City), for respondents.

VEEDER, District Judge. The respondent Hamburg-Amerikanische Packetfahrt Actien Gesellschaft objects to answering certain interrogatories attached to the libel, "upon the ground that for the respondent to answer any of such interrogatories might tend to incriminate it." It appears that the respondent is now under indictment in the District Court for the Southern District of New York charged with conspiracy in connection with the very matters concerning which the libelant seeks to obtain information from the respondent under the interrogatories mentioned. It is clear that any direct answer to the interrogatories might incriminate the respondent. Hence the sole question before the court is whether the respondent, as a corporation, may invoke the privilege.

Apparently this court is precluded from considering this question upon principle by the reasoning, if not by the actual decision, of the Supreme Court in Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, and companion cases decided on the same day, particularly Nelson v. United States, 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673. In Hale v. Henkel, where, in a proceeding under the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209), an officer of a corporation refused to testify or to produce books and papers on the ground of self-incrimination, the court held that so far as the witness was concerned personally he was protected by the immunity provision of that act, and that he could not set up the privilege of the corporation. Obviously, the privilege could be claimed for a corporation only through its officer. The reasoning of the court is adverse to such right:

"But it is further insisted that, while the immunity statute may protect individual witnesses, it would not protect the corporation of which appellant was the agent and representative. This is true, but the answer is that it was not designed to do so. The right of a person under the Fifth Amendment to refuse to incriminate himself is purely a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person. A privilege so extensive might be used to put a stop to the examination of every witness who was called upon to testify before the grand jury with regard to the doings or business of his principal, whether such principal were an individual or a corporation. The question whether a corporation is a 'person' within the meaning of this amendment really does not arise, except perhaps where a corporation is called upon to answer a bill of discovery, since it can only be heard by oral evidence in the person of some one of its agents or employés. The amendment is limited to a person who shall be compelled in any criminal case to be a witness against *himself*, and if he cannot set up the privilege of a third person, he certainly cannot set up the privilege of a corporation. * * * If, whenever an officer or employé of a corporation were summoned before a grand jury as a witness, he could refuse to produce the books and documents of such corporation, upon the ground that they would incriminate the corporation itself, it would result in the failure of a large number of cases where the illegal combination was determinable only upon the examination of such papers. Conceding that the witness was an officer of the corporation under investigation, and that he was entitled to assert the rights of the corporation with respect to the production of its books

and papers, we are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the state. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the state, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights. Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its powers are limited by law. It can make no contract not authorized by its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the Legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that a state, having chartered a corporation to make use of certain franchises, could not in the exercise of its sovereignty inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose. The defense amounts to this: That an officer of a corporation, which is charged with a criminal violation of the statute, may plead the criminality of such corporation as a refusal to produce its books. To state this proposition is to answer it. While an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, it does not follow that a corporation, vested with special privileges and franchises, may refuse to show its hand when charged with an abuse of such privileges."

Further on the court said:

"Although, for the reasons above stated, we are of the opinion that an officer of a corporation which is charged with a violation of a statute of the state of its creation, or of an act of Congress passed in the exercise of its constitutional powers, cannot refuse to produce the books and papers of such corporation, we do not wish to be understood as holding that a corporation is not entitled to immunity, under the Fourth Amendment, against *unreasonable* searches and seizures."

The opinion of the majority of the court was delivered by Mr. Justice Brown. Mr. Justice Harlan and Mr. Justice McKenna delivered separate concurring opinions. The former, while concurring "entirely in what is said in the opinion of the court * * * as to the scope of the Fifth Amendment to the Constitution," added:

"In my opinion, a corporation * * * cannot claim the immunity given by the Fourth Amendment; for it is not a part of the 'people,' within the meaning of that amendment. Nor is it embraced by the word 'persons' in the amendment."

Mr. Justice McKenna concurred in the judgment, "but not in all the propositions declared by the court":

"There are certainly strong reasons for the contention that, if corporations cannot plead the immunity of the Fifth Amendment, they cannot plead the immunity of the Fourth Amendment. The protection of both amendments, it can be contended, is against the compulsory production of evidence to be used

in criminal trials. Such warrants are used in aid of public prosecutions (Cooley, Constitutional Lim. [6th Ed.] 364), and in Boyd v. United States, 116 U. S. 616 [6 Sup. Ct. 524, 29 L. Ed. 746], a relation between the Fourth Amendment and the Fifth Amendment was declared. It was said the amendments throw great light on each other, "for the "unreasonable searches and seizures" condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment; and compelling a man "in a criminal case to be a witness against himself," which is condemned in the Fifth Amendment, throws light on the question as to what is an "unreasonable search and seizure" within the meaning of the Fourth Amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself.' Boyd v. United States is still recognized, and if its reasoning remains unimpaired, and the purpose and effect of the Fourth Amendment receives illumination from the Fifth, or, to express the idea differently, if the amendments are the complements of each other, directed against the different ways by which a man's immunity from giving evidence against himself may be violated, it would seem a strong, if not an inevitable, conclusion that, if corporations have not such immunity, they can no more claim the protection of the Fourth Amendment than they can of the Fifth."

Mr. Justice Brewer, with whom the Chief Justice concurred, dissented:

"The immunities and protection of articles 4, 5, and 14 of the Amendments to the federal Constitution are available to a corporation so far as in the nature of things they are applicable. * * * The fact that a state corporation may engage in business which is within the general regulating power of the national government does not give to Congress any right of visitation or any power to dispense with the immunities and protection of the Fourth and Fifth Amendments."

In Nelson v. United States, supra, Mr. Justice McKenna, speaking for the court, said in considering the third contention of the plaintiff in error:

"That the evidence, documentary and oral, required to be produced, was in the nature of incriminating evidence, which the witnesses and the defendants are privileged from furnishing to the plaintiff under the provisions of the federal Constitution and the well-recognized principles of equity procedure. This contention asserts rights personal to the plaintiffs and rights of the corporation defendants in the suit. The basis of both rights is the protection of the Fourth and Fifth Amendments to the Constitution of the United States. * * * The extent of the immunity [privilege?] and its application to corporations was considered in Hale v. Henkel and McAlister v. Henkel [201 U. S. 90, 26 Sup. Ct. 385, 50 L. Ed. 671], and decided adversely to the contention of plaintiffs in error."

The varying expressions of opinion in Hale v. Henkel, supra, were commented upon by the Circuit Court of Appeals for the Third Circuit in Cassatt v. Mitchell Coal & Coke Co., 150 Fed. 32, 81 C. C. A. 80, 10 L. R. A. (N. S.) 99; where, however, the question under consideration was not involved. But in the case of International Mining Co. v. Pennsylvania R. R. Co., 152 Fed. 557, it was held by the Circuit Court for the Eastern District of Pennsylvania, upon the authority of Hale v. Henkel, supra, and Nelson v. United States, 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673, that a corporation may not refuse to produce its books in an action against it to recover damages or penalties for a violation of the Interstate Commerce Act (Act Feb.

4, 1887, c. 104, 24 Stat. 379), on the ground that the evidence therein may incriminate it. Judge Holland expressed the opinion that the question had been practically disposed of by Hale v. Henkel. Inasmuch as I am of that opinion, the respondent will be directed to answer the interrogatories.

Although the order of July 29, 1915, as signed, gives the libelant leave to "amend the first interrogatory propounded to both respondents," the judge's memorandum on the respondent's exceptions shows that he referred to subdivision (d) of that interrogatory only. The respondent will be directed to answer subdivision (d) of the first interrogatory propounded to both respondents as amended; as to the remainder, (e) to (o), the respondent's exceptions are sustained.