## UNITED STATES v. BROWN.
### No. 7353.

Circuit Court of Appeals, Seventh Circuit. Dec. 20, 1940.

Edward J. Hess, of Chicago, Ill., for appellant.

J. Albert Woll, of Washington, D. C., and Paul M. Plunkett, Asst. Dist. Atty., of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decision of the District Court entered May 21, 1940, adjudging the defendant guilty of contempt of court and imposing a six months' jail sentence.

The Presentment by the Grand Jury charged the defendant and one Goldstein

with conduct and testimony before the Grand Jury constituting wilful obstruction of an investigation then in progress. After a hearing, at which oral and documentary evidence was presented, the District Court discharged Goldstein, but adjudged Brown guilty as charged.

The Presentment, so far as here material, consisted of Parts 1, 2 and 3. As a prelude to the charges, the Presentment recites that the Grand Jury was engaged in investigating the ownership and operation of certain gambling houses to ascertain whether the income therefrom was a source of income to one Johnson and Skidmore, and that in the course of the investigation information was presented that certain currency exchanges were handling and clearing large sums of money for these houses and performing other services for them. The Presentment further recites that one of these currency exchanges, the Lawrence Avenue Currency Exchange, was located in a building owned by the said Johnson and was operated by Brown and one Bernice F. Downey between July 12, 1938, and September 30, 1939, as an alleged partnership. It was alleged that during this period, more than a million dollars worth of checks originating from these houses had been cashed by that currency exchange. The Presentment further recites that on November 1, 1939, Brown had been requested by an Internal Revenue agent to submit the books and records of the currency exchange for examination by the Internal Revenue Bureau, but that Brown, about that time, left Chicago without complying with the request, and that the Internal Revenue Bureau was unable to learn of his whereabouts until January 10, 1940, at which time he appeared before the Grand Jury. It was also alleged that Bernice F. Downey left her home in Chicago about the same time and that since then her whereabouts have been unknown. On January 10, 1940, and on several occasions thereafter, Brown appeared and gave testimony before the Grand Jury. A record of his testimony was made and attached to and made a part of the Presentment. It was alleged that his testimony was pertinent to the subject matter of the investigation, and that it constituted wilful, deliberate and contumacious obstruction of their investigation.

Part 1 of the Presentment relates to the whereabouts of the records of the Lawrence Avenue Currency Exchange. It charges Brown with having given testimony that these records containing information relative to the amounts, dates, payees and makers of checks received from the gambling houses, had been destroyed by him within a few days after the closing of the currency exchange on September 30, 1939, and that the remainder of his records had been personally removed by him to the home of his brother. It is then alleged that such records had not been destroyed by Brown, but remained on the premises of the currency exchange until late in October, at which time all of them were removed by Bernice F. Downey. to her home.

Part 2 had to do with Brown's testimony concerning a bank account from which he claimed he obtained the money to set himself up as a partner in the currency exchange, and that he was unaware that Johnson owned or had any connection with the premises. The charge follows that Brown did not have the bank account as asserted, and that he rented the premises through Johnson's attorney, Goldstein.

Part 3 relates numerous details concerning the customers of the exchange and the manner in which the business was conducted. It alleged that concerning these matters, the testimony of Brown was vague, indefinite, evasive and self-contradictory and constituted a deliberate and studied effort to mislead the Grand Jury and obstruct the administration of Justice.

Defendant's argument for reversal is predicated principally upon two propositions: (1) That the Presentment did not charge an obstruction of the administration of Justice, and that it was so vague that the defendant was not fairly informed as to the charges, and (2) that the defendant was not proven guilty beyond a reasonable doubt.

█ We have already stated briefly the charges contained in the Presentment and we see no occasion to go into detail. While the Presentment is divided into three parts, we know of no rule or law which required that it be so divided, and we assume this was for the purpose of convenience rather than necessity. The court found the defendant guilty and imposed its sentence upon the Presentment as a whole, and not with any reference to any particular charge as stated in the different parts. We think, undoubtedly, that Parts 1 and 2 properly charge the defendant with conduct and testimony obstructing, or, at any rate, tending to obstruct, the administration of justice. The defendant argues that Part 3, and the other parts to a lesser extent, were

so indefinite and uncertain that they failed to inform the defendant as to the charge which he was required to meet. The District Court, in commenting upon this contention, stated: "* * * On application, the defendants would have been entitled to a specific bill of particulars covering such general charges. No application for a bill of particulars was requested."

The failure of the defendant to make application for a bill of particulars, under the circumstances of this case, has frequently been held as precluding the defendant from later asserting the charge was too indefinite. Schwartz v. United States, 4 Cir., 217 F. 866, 869; Bowles v. United States, 4 Cir., 50 F.2d 848; Conley v. United States, 8 Cir., 59 F.2d 929, 935.

Defendant's contention that we must review the evidence with a view of determining whether the defendant has been proven guilty beyond a reasonable doubt, is clearly erroneous. Such a theory calls for a trial de novo, which is not within our province. In Bessette v. W. B. Conkey Company, 194 U.S. 324, on page 338, 24 S. Ct. 665, on page 671, 48 L.Ed. 997, the court, after sustaining a right of review in contempt cases, said: "* * * Such review must, according to the settled law of this court, be by writ of error. Walker v. Dreville, 12 Wall. 440, 20 L.Ed. 429; Deland v. Platte County, 155 U.S. 221, 15 S. Ct. 82, 39 L.Ed. 128; Bucklin v. United States, 159 U.S. 680, 16 S.Ct. 182, 40 L.Ed. 304. On such a writ only matters of law are considered. The decision of the trial tribunal, court or jury, deciding the facts, is conclusive as to them."

In Schwartz v. United States, supra, the court, on page 870 of 217 F., said: "The well-established principle is that in a case of criminal contempt the trial court must be convinced of the guilt of the accused beyond a reasonable doubt, but when there is evidence tending to show guilt the finding of fact by the trial court cannot be reviewed by this court. * * *"

To the same effect is Binkley v. United States, 8 Cir., 282 F. 244, 246.

It is therefore apparent that the function of a reviewing court in a case of this kind is precisely the same as in other cases of a criminal nature—that is, to review questions of law. This includes, of course, the question as to whether there is evidence which supports, or tends to support, the judgment of the Trial Court.

The Exhibit attached to the Presentment —the testimony of the defendant before the Grand Jury—is in question and answer form, and occupies more than 200 pages of the transcript. Obviously, we are not justified in relating in detail the material portions of this testimony. We shall make brief reference to the testimony in support of Paragraph 1.

Brown, who was a trained and experienced banker and business man, operated the Lawrence Avenue Currency Exchange. According to his own testimony, during the fourteen-month period it was in operation, he received business from various gambling houses in the amount of $800,000. The Grand Jury asserts that the business amounted to $1,200,00. According to defendant's figures, however, it is apparent that the records of the currency exchange were material to the subject matter of the Grand Jury investigation. Brown testified before the Grand Jury that these records, or, at any rate, material portions of them, were burned in the basement furnace shortly after the exchange ceased doing business. The evidence that such records were seen in the vault subsequent to the time Brown claims they were destroyed, and that they were later removed, is convincingly disclosed. The Trial Court was justified in so believing—in fact, it could not have well believed otherwise. It is true, as argued by the defendant, that false swearing in itself is not sufficient to constitute contempt. Ex parte Hudgings, 249 U. S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333. In other words, where perjury is committed, it must be shown that its purpose is to obstruct. In the instant case, we think the court was justified in ascribing such motive to the defendant. In fact, it is difficult to reconcile his false testimony in this respect upon any basis other than that it was for the purpose of preventing the Grand Jury from obtaining evidence which was material, and perhaps valuable to it in the investigation then in progress.

We have carefully reviewed the evidence, and without commenting further, we think it is sufficient to sustain the judgment of the Trial Court in all respects.

The judgment is affirmed.