**In re MICHAEL.**

No. 8734.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 6, 1944.

Decided Dec. 16, 1944.

Writ of Certiorari Granted April 2, 1945.
See 65 S.Ct. 914.

Stanley F. Coar, of Scranton, Pa., and Robert T. McCracken, of Philadelphia, Pa., for appellant.

Max H. Goldschein, Sp. Asst. to Atty. Gen., for appellee.

Before GOODRICH and McLAUGH-LIN, Circuit Judges, and GANEY, District Judge.

GOODRICH, Circuit Judge.

Robert Michael was convicted of criminal contempt in the United States District Court for the Middle District of Pennsylvania. He appeals. The foundation of the discussion of both his rights and liabilities is, of course, the statute, Section 268 of the Judicial Code, 28 U.S.C.A. § 385, which provides as follows: "The * * * courts [of the United States] shall have power * * * to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power

to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice * * *."

■ The argument for the appellant makes several points, some of which may be disposed of briefly before passing to the one which requires more elaborate consideration. In the first place, he says, alleged acts which constitute the contempt took place in the grand jury room where the judge was not and could not lawfully be present. This, he says, was not in the presence of the court or so near thereto to come within the statute. This point is directly settled to the contrary by this Court in Camarota v. United States, 1940, 111 F. 2d 243, 246, certiorari denied, 1940, 311 U. S. 651, 61 S.Ct. 16, 85 L.Ed. 416 where the Court said: "Since the grand jury is an arm of the district court, proceedings before it are to be regarded as being proceedings in the court."

■ Point is made of the fact that there was no formal presentment by the grand jury nor was there a sworn petition by the attorney for the United States. What happened was that with the grand jury present in the court room [1] the attorney for the United States, stating that he was acting at the direction of the grand jury, complained of the appellant, and petitioned the court to hold him guilty of contempt. An order to show cause was issued by the court, a copy of the petition and order handed to the defendant's counsel and two days later copy of the transcript of the testimony of the appellant as a witness before the grand jury was furnished him. Full hearing was had upon the petition and defendant's answer thereto. The judgment of the court followed.

We think the defendant has nothing of which to complain because of the procedure followed. The power to punish for contempt in the presence of the court is not controlled by the limitations of the Constitution as to modes of accusation and methods of trial. Ex parte Hudgings, 1919, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333. While due process requires that the accused should know the charges and have reasonable opportunity to meet them, the proceedings are not required to take any particular form "so long as the substantial rights of the accused are preserved." Camarota v. United States, supra. We think they were clearly so preserved in this case.

■ The appellant also complains that the judgment does not recite that the court found him guilty beyond a reasonable doubt. [2] The judge did make a statement of such finding in open court, but the argument is that the judgment, itself, is what controls, not the oral explanation or comment which accompanied it. Counsel for the United States answers that the finding of guilt beyond reasonable doubt does not need to be included in the judge's order any more than such a finding needs to be included in a jury's verdict. It is the standard by which the evidence leading to or sustaining a conviction must be measured. It does not have to be formally written into either. We think the government's position is sound and, in the absence of conclusive authority to the contrary, none of which has been cited, we adopt it.

■ It is also alleged as error that certain letters and accounts of certain conversations were admitted, letters not to or from the appellant and conversations not in his presence. We find nothing in the court's action here which results in prejudice to the accused. The trial judge accepted the evidence so that he could get the whole picture and we have every confidence in his ability and desire to weed out the relevant from the irrelevant when it came to determining the weighing of the testimony against the accused.

This brings us, then, to the difficult point in the case. Here we pass from allegations of mere irregularities to the difficult question of whether this appellant could properly be convicted of contempt as a result of what he did. He was not contumacious or obstreperous. He did not refuse to answer questions. His testimony cannot fairly be characterized as unresponsive in failing to give direct answers to the questions asked him.

---

[1] This fact was stated in the record for appeal by the trial judge over the objection of the defendant. Defendant makes the further point that it does not appear that the members of the grand jury were in the court room in their capacity as grand jurors rather than spectators. We think there is no substance in the argument.

[2] It is not disputed that this is the test which must be met. Blim v. United States, 7 Cir., 1934, 68 F.2d 484.

Counsel for the appellant has analyzed the evidence and presented arguments why certain witnesses should not be believed and why the appellant should be believed. This line of argument we cannot go into, for it is not our function. We do not pass on the credibility of the witnesses. In our minds it is clear that there is testimony upon which the trier of the facts could reasonably have found that Michael was not telling the truth in the answers he gave to some of the questions propounded by the attorney for the United States. The questions were relevant to the subject then under examination which was an inquiry into the matters concerning the settlement of the affairs of the Central Forging Company, a corporation which had been in reorganization proceedings in the District Court for the Middle District of Pennsylvania. So here we have a witness who is asked questions relevant to an inquiry and he gives answers which may be and have been found to be untrue. For the purpose of the remainder of this discussion we shall assume the answers are untrue and that the accused might have been found guilty of perjury. May he likewise be found guilty of contempt of court and summarily punished accordingly or is he subject to prosecution for perjury only, in which he would be entitled to the Constitutional protection of trial by jury?

As Mr. Justice Cardozo said in Clark v. United States, 1933, 289 U.S. 1, 11, 53 S. Ct. 465, 468, 77 L.Ed. 993: "The books propound the question whether perjury is contempt, and answer it with nice distinctions." [3] He cites Ex parte Hudgings, supra, for the proposition that "Perjury by a witness has been thought to be not enough where the obstruction to judicial power is only that inherent in the wrong of testifying falsely." On the other hand, as he points out "obstruction to judicial power will not lose the quality of contempt though one of its aggravations be the commission of perjury." [4]

As pointed out by the court in United States v. Arbuckle, D. C. D. C., 1943, 48 F.Supp. 537, in every perjury case the false testimony tends to obstruct justice. It imposes burdens on court and counsel and its refutation takes time and expense. But this inherent obstructive effect of perjury is not sufficient to constitute the additional obstruction required to make a false witness also guilty of contempt. Judge Laws, in the case just cited, concludes that the requirement is that the perjury shall block the inquiry. If it does then it is obstruction. By "block the inquiry" is obviously not meant effectively to block the inquiry, because if the blocking was completely effective the truth would not be found out and the perjury not discovered. It is sufficient if it tends to block the inquiry or blocks it so far as a particular witness is concerned even though, as in the case before us, what is determined to be the truth is discovered from other witnesses.

Blocking the inquiry can clearly take place by the speaking of words as well as by other acts. If a witness tears up a significant paper in the grand jury room he is blocking the inquiry by destroying evidence. If he refuses to answer he is doing it by failure to furnish evidence. If he denies knowledge of something which it is determined beyond a reasonable doubt that he does know about he is blocking the inquiry just as effectively by giving a false answer as refusing to give any at all.

It is not without significance, we think, that the majority of the federal cases dealing with perjured testimony as contempt have to do with litigation on the investigatory side of legal proceedings as contrasted with the trial of particular issues of fact. Bankruptcy cases are the most frequent and an imposing array of authorities hold defendants for contempt for false answers in the investigation of affairs of bankrupt estates.[5] False testimony in

---

[3] The decisions, both state and federal, which have dealt with the question are collected and classified in notes, 11 A.L.R. 342 and 73 A.L.R. 817.

[4] In that case the accused by means of false swearing and concealment had accomplished her acceptance as a juror and the court points out that there is a distinction, not to be ignored, in deceit by a witness and deceit by a talesman, since a talesman when accepted as a juror becomes a part of the court.

[5] In re Eskay, 3 Cir., 1941, 122 F.2d 819; Schleier v. United States, 2 Cir., 1934, 72 F.2d 414, certiorari denied 1934, 293 U.S. 607, 55 S.Ct. 123, 79 L.Ed. 697; Haimsohn v. United States, 6 Cir., 1924, 2 F.2d 441; In re Gitkin, D.C.E.D.Pa., 1908, 164 F. 71.

such cases and false testimony before grand juries [6] tends to block investigation at the start and those are the types of cases in which convictions for contempt must frequently appear in the federal decisions. The position of the false witness in cases like these is different in degree from a false denial by a witness in the trial of a fact issue as to the speed of a motor car or his whereabouts on a given day.

In the case at bar there are several places where the defendant gave testimony which, assuming its untruth, was of a type tending to block the inquiry. For instance, he was examined concerning a batch of checks executed by him as trustee in reorganization proceedings of a company. The reason the checks were given and what the money went for were critical points in establishing the principal transaction with regard to the winding up of the reorganization proceedings. The witness either denied knowledge of the checks or gave explanations which could be found to be untrue. False explanation was as obstructive as an attempt to destroy the checks would have been.

The point is not free from difficulty. We have considered it carefully with full recognition of the importance of the constitutional provision for a jury trial of a person charged with crime. Our conclusion is that the appellant's rights were not disregarded, that he could have not only been found guilty of giving untrue testimony but that such conduct on his part was an obstruction of the administration of justice and that he could be and was properly held liable in the contempt proceedings.

Affirmed.

GANEY, District Judge (dissenting).

With the conclusion here reached by the majority, I dissent. With so much of the opinion as concerns the procedure complained of, and the admission of certain evidence, I am in agreement. I do not feel, however, that the evidence warranted the Trial Judge in holding the defendant in contempt of court.

The question here posed, while seemingly a simple one, has deeper implications and greater significance beyond the immediate case, for as a precedent it will broaden the field of judicial power in criminal contempt cases beyond its present limitations, and in so doing is portentous of a growing tendency through · attrition to wear away the ancient instrument fact finding—trial by jury.

It will serve no useful purpose to review the history of contempt cases in either England or this country. The power of committing individuals for criminal contempt in England, though rather broad in its beginning, became gradually narrower and more confining. Its exercise is best expressed by the great Master of the Rolls of the nineteenth century, Sir George Jessel, whose judgments have done so much to build up the fabric of the English law.[1]

In this country judicial authority to punish for contempts does not exempt it from constitutional limitations, since its only purpose is to secure it from obstruc-

---

[6] In re Meckley, 3 Cir., 1943, 137 F. 2d 310, certiorari denied 1943, 320 U.S. 760, 64 S.Ct. 69; Schleier v. United States, 2 Cir., 1934, 72 F.2d 414, certiorari denied 1934, 293 U.S. 607, 55 S. Ct. 123, 79 L.Ed. 697; United States v. McGovern, 2 Cir., 1932, 60 F.2d 880, certiorari denied 1932, 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561; Blim v. United States, 7 Cir., 1934, 68 F.2d 484; Lang v. United States, 2 Cir., 1932, 55 F.2d 922, certiorari dismissed 1932, 286 U.S. 523, 52 S.Ct. 495, 76 L.Ed. 1267; O'Connell v. United States, 2 Cir., 1930, 40 F. 2d 201, certiorari dismissed on stipulation, 1930, 296 U.S. 667, 51 S.Ct. 658, 75 L.Ed. 1472.

[1] In re: Clements v. Erlanger, 46 L. J. (N.S.) (Eq.) 375, 383 (1877): "Therefore it seems to me that this jurisdiction of committing for contempt being practically unlimited should be most jealously and carefully watched, and exercised, if I may say so, with the greatest reluctance and the greatest anxiety on the part of Judges to see whether there is no other mode which is not open to the object of arbitrariness and which can be brought to bear upon the subject. I say that a Judge should be most careful to see that the cause cannot be fairly prosecuted to a hearing unless this extreme mode of dealing with persons brought before him on accusations of contempt should be adopted. I have myself had on many occasions to consider this jurisdiction, and I have always thought that necessary though it be, it is necessary only in the sense in which extreme measures are sometimes necessary to preserve men's rights, that is, if no other pertinent remedy can be found. * * *"

tion in the performance of its duties, to the end that the means appropriate for the preservation and enforcement of the Constitution may be secured. Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186.

The power of the court to punish for contempt in "[his] presence, or so near thereto as to obstruct the administration of justice" extends to witnesses before a Grand Jury. O'Connell v. United States, 2 Cir., 40 F.2d 201; United States v. McGovern, 2 Cir., 60 F.2d 880.

The function of a reviewing court in a case of this kind is precisely the same as in other cases of a criminal nature, that is, to review questions of law. This includes, of course, the question as to whether there is evidence which supports or tends to support the judgment of the Trial Court. United States v. Brown, 7 Cir., 116 F.2d 455, 457.

Does the evidence in this case support the findings of the Trial Court? I think not. I agree with the findings of the majority that the defendant was not contumacious or obstreperous, that he did not refuse to answer questions, and further that his testimony cannot fairly be characterized as evasive in failing to give direct answers to the questions asked him, nor can it be said that his answers were not responsive. That he did not tell the truth in many instances, I am convinced. However, it is now well settled that a mere act of perjury on the part of a witness does not in and of itself, without something more, amount to contempt of court. Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333. The question in that case was whether the power to punish for contempt extended to every case where a court was of the opinion that a witness was committing perjury. The court there said, supra, 249 U.S. at page 383, 39 S.Ct. at page 339: "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rests. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty. As illustrative of this, see United States v. Appel, D.C., 211 F. 495."

It can be seen from this that it is not every obstruction to judicial power which is punishable by contempt, for perjury, which is the telling of an untruth, under oath, with respect to any material matter, 18 U.S.C.A. § 231, of necessity must be an obstruction in some degree, since by its very definition it is the telling of a falsehood with respect to a material issue involved in the case. What additional element must be present then besides perjury in order to hold a witness in contempt of court? It seems to me, from an analysis of the cases, that the answers to the question or questions propounded to the witness must have a tendency to block the inquiry or to hinder the power and duty of the court in the performance of their functions. That this does not admit of precise definition is obvious. However, precedent has pointed up the essential requisites. It seems to me the answers to the questions by the witness must have a tendency to mislead the court with respect to a material issue, by artful attempts at evasion; or a stalling of the court's inquiry by a palpable failing of memory concerning events of importance through repeated resort to "I do not remember"; or by destruction by the witness of books and papers material to the issue; or by conduct which is obstreperous or contumacious; or by answers no less, which though responsive, are yet wily and ambiguous and which by innuendo or indirection tend to shunt the focus of the inquiry. Clearly, it seems to me, none of these factors obtain in the instant case.

Some reliance is had by the majority on the fact that the witness could not tell what six checks in number were for, which he had signed as trustee in the reorganization of the Central Forging Company of Catawissa, though he testified to signing many checks, as many as one hundred fifty at a time. Wherein these answers could be said to tend to block the court's inquiry, or obstruct the functions of the court in its investigation, I cannot find, since the answers were not contumacious nor evasive nor artfully or designedly made, which could in any way mislead or have a tendency to forestall the inquiry and at most, if untrue, amount only to perjury.

In United States v. Appel, supra, the illustration given by the Supreme Court in the Hudgings case, supra, the defendant was held in contempt for what the court stated was "obviously a sham". In that instance, the witness testified before a Commissioner that he could not remember what he had done with large sums of money or how he had spent them, which he had drawn from a bank account, only four or five days before.

In O'Connell v. United States, supra, the witness was in attendance at a Grand Jury investigation covering the commission of a federal offense in connection with the "Albany Baseball Pool". Here, the defendant was held in contempt of court for plainly "holding back what he knew of the extent and duration of his acquaintance with some of the persons in connection with the pool whom he admitted knowing," and in "his refusal to state his best recollection" which made it impossible to pursue the inquiry further into matters whose relevancy might have clearly appeared. In United States v. McGovern, supra, the witness was held in contempt of court upon his failure to disclose what uses he had made of $380,000 which he withdrew in cash and concerning which he made a claim of privilege and which during the course of the testimony turned out to be a sham and where his answers were generally tantamount to palpable concealment. In United States v. Brown, 7 Cir., 116 F.2d 455, the defendant was held in contempt of court when he testified that records material to the investigation had been burnt by him, when the evidence showed that they were later removed to a different place. In United States v. Karns, D.C., 27 F.2d 453, the defendant was held in contempt of court because he presented false and fraudulent instruments in evidence, and for corruptly testifying falsely, with respect to their authenticity, which was directly pertinent to the issues in the case. In Re Meckley, 3 Cir., 137 F.2d 310, the presentment charged the defendant with giving answers to the questions which were false and subterfuges; "in blocking the search for truth by answering with the first preposterous fancy which he chose to put forward; in contumaciously parrying with the examiner and Grand Jurors." The court in this instance found that the conduct set forth in the presentment was true and that this amounted to contumacy. In Clark v. United States, 289 U. S. 1, 11, 53 S.Ct. 465, 77 L.Ed. 993 the witness was held in contempt of court for falsely stating her past employment when called upon in her voir dire examination in which she deliberately concealed her employment by the defendant. Here the court stated, supra, 289 U.S. at page 11, 53 S.Ct. at page 468: "The petitioner is not condemned for concealment, though concealment has been proved. She is not condemned for false swearing, though false swearing has been proved. She is condemned for that she made use of false swearing and concealment as the means whereby to accomplish her acceptance as a juror, and under cover of that relation to obstruct the course of justice." Throughout these cases I think it can be seen that in every instance the answers of the witness held in contempt amounted to a hindrance to the court in the pursuit of its inquiry.

In United States v. Arbuckle, D.C., 48 F. Supp. 537, a case oddly enough relied on by the majority, the court refused to hold a witness in contempt where the facts, it seems to me, disclose a far stronger case than the instant one. In this case the witness admitted at the hearing on the contempt charge that his testimony given during the trial of an indictment for embezzlement had been false and untruthful, and that this testimony tended to establish the innocence of the defendant, as well as strongly suggest criminal guilt of a prosecution witness. In pointing out that there was not necessarily an inherent obstructive effect to false swearing, the court says, supra, 48 F.Supp. at page 538: "What, then, is perjury having the 'obstructive effect' to which the Supreme Court referred? (Reference is made to Ex Parte Hudgings, supra.) A study of the decided cases which bear on this point seems to establish that it is 'perjury which blocks the inquiry.' This is the definition given by Hand, J., in United States v. Appel, D. C. 211 F. 495, a case referred to by the Supreme Court, in its Hudgings' decision, as illustrating its view. If false testimony given in a case results in a defiance of the Court or in frustration of its right to obtain testimony, then the witness in legal effect is contumacious, he is a contemnor, as well as a perjurer, and may be punished for contempt. But if the witness fully gives testimony, and in so doing testifies falsely, not in order to prevent the inquiry, but only in order to deceive, there is no contumacy, no blocking of the inquiry, and.

·the remedy is solely by indictment for perjury and trial by jury." It seems to me that a careful study of the testimony given before the Grand Jury in the instant case in nowise measures up to the conduct of the defendants in any of the cases herein cited. He was not contumacious, he was not obstreperous; his answers were responsive, and while as I have indicated, I do not feel he was telling the truth at all times, I cannot possibly see where any of his answers, aside from being possibly perjurious, tended in anywise to block the inquiry. At most his guilt or innocence should be decided by a trial upon indictment for perjury.

The use of this drastic power wherein a judge sits as accuser, trier of the fact, and dispenser of punishment should only be exercised when the obstruction to the performance of judicial duty is clearly shown. Ex parte Hudgings, supra. I feel it to be of prime importance, no more and no less, that witnesses called in any inquiry should have ease and freedom of mind in testifying, as well, that they tell the truth and in nowise hinder the seeking of truth. It is in the proper maintenance of this balance that lies the security of our courts.

Judgment should be reversed.