## HOWARD v. UNITED STATES.

No. 14126.

United States Court of Appeals
Eighth Circuit.

June 16, 1950.

Ira B. McLaughlin, Independence, Mo., for appellant.

Max H. Goldschein, Special Assistant to the Attorney General (Vincent P. Russo, Special Assistant to the Attorney General, Sam M. Wear, United States Attorney, and Harry F. Murphy, Assistant United States Attorney, Kansas City, Mo., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The substantial question for decision in this case is whether a witness who gives false and evasive testimony before a federal Grand Jury and prevents it from ascertaining the truth, thereby obstructing its inquiry, may be adjudged guilty of civil contempt by the District Court and committed to the custody of the United States Marshal until the witness elects to testify truthfully or until the further order of the court.

The answer to this question, we think, depends upon whether or not the United States District Courts have the power, under § 401, Title 18 U.S.C.A.,[1] to keep the administration of justice free from obstructions due to the deliberate suppression of the truth by witnesses through perjury, deceit, and evasion. That the power to

1. Section 401, Title 18 U.S.C.A., so far as pertinent, provides:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
* * *."

punish for contempt, like other judicial powers, is capable of abuse, has long been recognized. "But that is not an argument to disprove either its existence, or the necessity of its being lodged in the courts. That power cannot be denied them, without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community." Ex parte Terry, 1888, 128 U.S. 289, 309, 9 S.Ct. 77, 81, 32 L.Ed. 405. Compare, Loubriel v. United States, 2 Cir., 9 F.2d 807, 808.

The facts out of which this case arises are, in substance, as follows: A Grand Jury was impaneled by the District Court on March 14, 1949. The appellant was summoned as a witness and examined before the Grand Jury on February 2, 6, 7 and 8, 1950. On February 8, 1950, the Grand Jury filed a presentment stating that on September 28, 1949, it began investigating the violation of certain federal laws and the identity of the person or persons violating those laws; that it became necessary to ascertain the facts concerning the acquisition by the appellant of about $18,000 during the years 1944 to 1949, which she had deposited in various savings and checking accounts, and the name of the person from whom she acquired this money; that it appeared that the appellant was presently employed in the office of the County Assessor of Jackson County, Missouri, and had been employed there for about fourteen months at a monthly salary of $175; that, prior to such employment, she had been employed as a saleswoman by various employers; that as such her weekly earnings averaged about $40, except for one year when she earned between $2,700 and $3,000; that prior to July, 1944, she had made no substantial deposits in any bank in Missouri; that in July, 1944, she opened savings accounts in Kansas City, Missouri, with the Commerce Trust Company and the First National Bank; that in September, 1945, she opened a checking account, and in May, 1946, a savings account, with the Mercantile Home and Trust Company, of Kansas City; and that from July 19, 1944, to July 28, 1949, her total deposits in these accounts aggregated more than $28,000.

The Grand Jury in its presentment stated that the appellant testified that she had received, in 1932, 1933, and 1934, about $18,000 from Jack Griffin, alias Jack Gregory (who is said to have been a Kansas City gangster), and that she had carried it around with her, and concealed it in various places in Kansas City and St. Louis, for more than ten years after Griffin's disappearance in 1934 and after it had been reported that he had probably been killed in retaliation for the murder of Johnnie Lazia [a gang leader]; that the appellant had begun depositing this money in 1944; and that in September, 1947, she gave Charles Gargotta [also a Kansas City gangster; see Claiborne v. United States, 8 Cir., 77 F.2d 682, 683] $2,400 in cash to purchase a Buick automobile; that she had this money in a manila envelope, but did not know how much money the envelope contained.

The concluding paragraphs of the presentment read as follows:

"The Grand Jury further presents that the said Blanche A. Howard, in answer to questions propounded to her, fails and refuses to truthfully tell where she got the $18,000 in cash which she sporadically deposited in various amounts at the Commerce Trust Bank, First National Bank, and Mercantile Home and Trust Company, or to truthfully tell the name of the person from whom she received said $18,000.

"That the said witness, Blanche A. Howard, in answer to questions propounded to her, fails and refuses to truthfully tell the Grand Jury the full part that Charles Gargotta played in the purchase of the Buick automobile purchased in her name from the Markl Motor Company.

"The Grand Jury, therefore, charges that the said witness, Blanche A. Howard, has given obstructive, evasive, perjurious and contumacious answers to questions propounded to her before said Grand Jury and that she has deliberately, willfully and contumaciously obstructed the investigation of this Grand Jury in the matters hereinbefore set out.

"That the said witness, Blanche A. Howard, has willfully, deliberately, and contu-

maciously obstructed the process of this Court in giving answers which impeded, delayed, and hampered the instant investigation which sought to shut off and block the instant inquiry in giving answers which were shifts and subterfuges instead of truths, in blocking the search for truth by answering with the first preposterous fancy which she chose to put forth; and in otherwise failing and refusing truthfully and fully to answer these proper questions put to her in the proceedings before the Grand Jury and

"The Grand Jury, Therefore, Prays the coercive power of the Court to compel the witness, Blanche A. Howard, to truthfully answer without evasion or subterfuge the questions propounded to her."

A copy of the presentment was served on the appellant on February 8, 1950, and a hearing thereon was tentatively set for February 10, 1950. The appellant, on February 10, asked for a reasonable time to prepare her defense, and suggested two weeks. The court set the hearing for February 13, 1950, at which time the appellant requested ten days additional time. The request was denied, and she filed her return and answer denying that her conduct in answering questions before the Grand Jury was contumacious, obstructive, evasive or perjurious, or that she had wilfully and contumaciously obstructed the investigation of the Grand Jury. She also denied that her testimony before the Grand Jury relative to having deposited money given her by Jack Griffin, alias Jack Gregory, in 1932, 1933, and 1934, was susceptible to the construction placed upon such testimony by the presentment; and stated "that the actual purport and intention of her testimony was that all of the money that she ever received from said Gregory might have aggregated in the neighborhood of $17,000 or $18,000, but that large amounts of said money were returned periodically to said Gregory before his disappearance, so that, at the time of his disappearance she had only a part of said money, which she kept at the places mentioned and later deposited some portions thereof in the banks aforesaid." She asserted that she answered the questions propounded to her before the Grand Jury truth-

fully and as accurately as her recollection would permit. She stated that she believed that if more time was allowed her to investigate the facts surrounding the making of deposits, she could more fully and accurately give information relative thereto.

To support the charges contained in the presentment, the Government, at the hearing, introduced a transcript of the appellant's testimony before the Grand Jury and certain exhibits connected therewith.

The evidence of the witnesses who appeared on the appellant's behalf tended to show that probably around 1935 she had some money in the home of her mother at St. Joseph, Missouri; that the appellant's brother, between 1944 and 1949, had given to her not "over twelve or fifteen hundred dollars"; that a cousin several times had borrowed money from the appellant and had paid it back by depositing it in the appellant's bank account; that on June 25, 1949, this cousin deposited $500 in the appellant's account; that during the time the appellant was employed by Stern-Slegman-Prins, from 1937 to 1940, in Kansas City, she kept a manila envelope in the vault of her employer; and that in 1941 James McAteer, of St. Louis, Missouri, at whose home the appellant had occasionally lived while in that city, borrowed $800 in cash from her for a few days, and returned it by wire to her at Kansas City. This evidence was intended to corroborate, to some extent, the appellant's testimony before the Grand Jury that, prior to 1944, she carried the money received from Griffin, or some substantial part of it, around with her; that she had received gifts of money from friends and relatives; and that some of her deposits were repayments of loans.

The judgment of the court, from which this appeal is taken, so far as pertinent, reads as follows:

"It appearing to the Court that the respondent, Blanche A. Howard, has previously testified before the Grand Jury that in the years 1932, 1933, and 1934, she received between seventeen and eighteen thousand dollars from one Jack Griffin, alias Jack Gregory, to hold for him, and that although she had read many newspaper articles reporting that he was murdered be-

cause he allegedly killed one Johnny Lazia, a notorious Kansas City gang leader, and that she hadn't seen or heard from Gregory since his disappearance in 1934, she kept said money, upon his instructions, about her, in the safe of an employer, at her hotel, or in her room, in Kansas City and in St. Louis, Missouri, until 1944 when she began to make deposits of said money in various amounts in three savings and one checking account in various Kansas City Banks which she opened between July 19, 1944 and May 4, 1946; that she kept none of this money in a safe deposit box which she had rented at the First National Bank in 1944, and

"It further appearing to the Court from all the evidence introduced at the hearing that the respondent's answers to questions she gave to the Grand Jury relative to where she obtained or received this seventeen or eighteen thousand dollars is false beyond a reasonable doubt, and that her false testimony is obstructive, evasive, perjurious and contumacious, and that she has, and is, deliberately, willfully, and contumaciously obstructing the investigation of this Grand Jury in the matters hereinbefore set out, and

"That the said respondent, Blanche A. Howard, has willfully, deliberately, and contumaciously obstructed the process of this Court in giving answers which were shifts and subterfuges instead of truths, in blocking the search for truth by answering with the first preposterous fancy which she chose to put forth; and in otherwise failing and refusing truthfully and fully to answer these proper questions put to her in the proceedings before the Grand Jury.

"It Is, Therefore, Ordered, Adjudged and Decreed that the said respondent, Blanche A. Howard, be committed to the custody of the United States Marshal and by him held until said respondent requests to be returned to the said Grand Jury and truthfully tell the Grand Jury where or from whom she acquired this seventeen or eighteen thousand dollars which she falsely testified before the Grand Jury she received from Jack Gregory or until further order of this Court."

The contentions of the appellant are that: (1) the court denied her due process in refusing to allow her more time to prepare her defense; (2) Rule 12(a) of the Rules of Civil Procedure, 28 U.S.C.A., was applicable and was disregarded; (3) the court lacked power to adjudge the appellant guilty of contempt and to place her in the custody of the United States Marshal until she elected to testify truthfully; (4) her constitutional rights to a jury trial, to freedom of speech, and to protection against self-incrimination, were disregarded; (5) the evidentiary basis for the judgment was inadequate to support it; and (6) the contempt, if any, was criminal, and only a definite sentence could be imposed.

The general rule relative to the duties of witnesses before a Grand Jury and the power of the court to deal summarily with those who obstruct or interfere with the administration of justice by refusing to testify, by testifying falsely, or by suppressing the truth, is, we think, well stated by Judge Chase in United States v. McGovern, 2 Cir., 60 F.2d 880, 888–889, certiorari denied, 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561, as follows: "What a grand jury may investigate or the scope of its inquiry cannot be questioned by a witness before it. Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979. All persons within its jurisdiction, upon being lawfully summoned before it, are bound to disclose what they know in answer to questions asked to discover the truth concerning the matters being investigated. Neither the competency of their testimony or its relevancy is their concern. Nelson v. United States, 201 U.S. 92, 26 S.Ct. 358, 50 L.Ed. 673. As no formal charge against any one need have been made before a witness can be compelled to testify before a grand jury, Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, it is obvious that a witness can rarely, if ever, know whether his testimony is relevant or not. Indeed, the purpose of the grand jury's inquiry is to get at facts which will enable it to determine whether formal charges should be made against some one and not to try offenders. Hendricks v. United States, 223 U.S. 178, 32 S.Ct. 313, 56 L.Ed. 394. As the investigation proceeds, whatever leads may be developed must be run

down to find as accurately as possible what the truth is, and any false testimony which impedes and hampers the course of the investigation is material in the sense that it has a tendency to affect the ultimate action of the grand jury. Carroll v. United States, 2 Cir., 16 F.2d 951. Evasions and half truths which hinder and mislead stand the same. A wily witness who avoids the danger of a blunt refusal to answer by mere lip service to his duty and conceals the truth by the use of words may be as obstructive as his fellow of less mental agility who simply says nothing. When the answers of a witness amount to the crime of perjury, the offender may be guilty of contempt, provided there is also some obstruction of justice in addition to the necessary elements of that crime. Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333. But the power to punish for contempt does not reside in the court to compel a witness to testify in accord with the court's conception of the truth. On the other hand, a witness who obstructs the course of justice by so acting that the court's performance of its duty is frustrated is not beyond the reach of the contempt power because he chooses false swearing as the means to his end in so doing. Of course, the contempt power does not afford an alternative method for trying an accused for perjury. No deprivation of the right of one charged with that crime to a trial by jury can be sanctioned. Perhaps the best way to put it is that, where the court is justified in believing, and does believe, that a witness has obstructed the administration of justice, the witness may be adjudged in contempt whether he has sworn falsely or not, but, where the court is not justifiably convinced that the performance of its duties has been obstructed, it cannot act under the contempt power even though perjury has been committed." See, also, Clark v. United States, 289 U.S. 1, 12, 53 S.Ct. 465, 77 L.Ed. 993; United States v. Appel, D.C.S.D.N.Y., 211 F. 495; Loubriel v. United States, 2 Cir., 9 F.2d 807, 808; O'Connell v. United States, 2 Cir., 40 F.2d 201, 204–205; Lang v. United States, 2 Cir., 55 F.2d 922; In re Presentment by Grand Jury of Ellison, 3 Cir., 133 F.2d 903, certiorari denied 318 U.S. 791, 63 S.Ct. 995, 87 L.Ed. 1157; In re Meckley, 3 Cir., 137 F.2d 310.

The controlling question in this case is, we think, whether the opinion of the Supreme Court in In re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30, reversing the Circuit Court of Appeals for the Third Circuit, 146 F.2d 627, in a case which bears some analogy to the instant case, imports a further limitation on what has been generally thought to be the power of the District Courts to deal summarily with a witness who obstructs an inquiry by a Grand Jury by giving false, vague and evasive testimony. In the Michael case, the Supreme Court, after stating that Congress, in enacting the applicable statute, intended to limit the court to "the least possible power adequate to the end proposed", said, pages 227–228 of 326 U.S., at page 80 of 66 S.Ct., 90 L.Ed. 30: "All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact finding tribunal must hear both truthful and false witnesses. It is in this sense, doubtless, that this Court spoke when it decided that perjury alone does not constitute an 'obstruction' which justifies exertion of the contempt power and that there 'must be added to the essential elements of perjury under the general law the further element of obstruction to the Court in the performance of its duty.' Ex parte Hudgings, supra, 249 U.S. 382, 383, 384, 39 S.Ct. [337], 339, 340, 63 L.Ed. 656, 11 A.L.R. 333. And the Court added 'the presence of that element [obstruction] must clearly be shown in every case where the power to punish for contempt is exerted.' " We do not understand this language to mean that an obstruction to the inquiry of a Grand Jury by the giving of false, evasive and vague testimony must completely disable the court or Grand Jury from functioning before the obstruction may be dealt with as a contempt, and that all that can be

done if the judicial process is not definitely halted, is to institute a prosecution for perjury. It seems to us that the opinion of the Supreme Court in the Michael case is based squarely upon the ground that "there was, at best, no element except perjury 'clearly shown,'." page 228 of 326 U.S. at page 80 of 66 S.Ct., 90 L.Ed. 30, or in other words, that there was no adequate basis for finding any obstruction to the judicial process.

■ We shall not detail in this opinion the testimony given by the appellant. We think it was correctly characterized by the Grand Jury in its presentment and by the District Court in its judgment. The appellant was not obstreperous or insolent, nor did she refuse to answer questions. In our opinion, however, the District Court was justified in finding that, beyond a reasonable doubt, her answers were evasive, fantastic, and untrue, and that their effect and purpose was to obstruct the inquiry of the Grand Jury. "Whether this was perjury or false swearing, there is no occasion to inquire. It was a deliberate endeavor to thwart the process of inquiry, and to turn a trial [here, a Grand Jury investigation] into a futile form." Clark v. United States, 289 U.S. 1, 10, 53 S.Ct. 465, 468, 77 L.Ed. 993.

That appellant's testimony as to the $18,000 was not merely untruthful but an attempt to avoid giving information is apparent also from her answer to the presentment. She had been asked expressly before the Grand Jury where the money came from that went into her bank accounts, and she had answered categorically that "around $18,000" of it had been given to her in 1932, 1933 and 1934 by Jack Griffin, alias Gregory. On her reappearance before the Grand Jury the following day, she repeated, "I told you that the majority of the money that I had, * * * I had gotten from Jack Griffin * * *." In her answer to the presentment she said that what she intended to convey to the Grand Jury was "that all of the money that she ever received from said Gregory might have aggregated in the neighborhood of $17,000 or $18,000, but that large amounts of said money were returned periodically to said Gregory before his disappearance, so that, at the time of his disappearance she had only a part of said money, which she kept at the places mentioned and later deposited some portions thereof in the banks aforesaid." This manifestly was an attempt to hedge and to escape from her previous testimony and to add further equivocation, evasion and confusion to the situation. She was offered the opportunity to reappear before the Grand Jury, but did not wish to do so. Thus, she admitted in her answer that she had not given correct information to the Grand Jury, while at the same time she attempted to becloud the situation still more and to leave the jury without any explanation whatever of the source of most of the $17,000 or $18,000 part of her $28,000 deposits. This factor, too, was entitled to be taken into account by the trial court in branding her testimony as "obstructive, evasive, perjurious and contumacious" and in ordering her committed until she asked to reappear before the Grand Jury and was willing to tell "where or from whom she acquired this seventeen or eighteen thousand dollars which she falsely testified before the Grand Jury she received from Jack Gregory."

■ If the appellant's conduct constituted contempt, we think it is not important whether it was treated as a civil or a criminal contempt, or as both. United States v. United Mine Workers of America, 330 U.S. 258, 302, 303, 67 S.Ct. 677, 91 L.Ed. 884. The appellant can hardly complain because the court imposed a coercive judgment rather than a definite sentence. Her confinement in the custody of the United States Marshal is not indeterminate. She can terminate it by going before the Grand Jury and testifying to the truth, or, if she elects not to do so, her confinement will not extend, in any event, beyond the life of the present Grand Jury. Loubriel v. United States, supra, 2 Cir., 9 F.2d 807, 809. Since the Grand Jury was impaneled on March 14, 1949, its term of service cannot extend beyond September 14, 1950. See Rule 6(g), Rules of Criminal Procedure, 18 U.S.C.A.

■ The appellant's contentions with respect to a lack of procedural due process,

we think, require no discussion. The proceedings were summary, not plenary. She was promptly advised of the presentment of the Grand Jury charging her with contempt, and afforded five days within which to procure counsel, to file her response, and to make her defense. No prejudice is shown to have resulted from the procedure adopted. The issue for determination at the hearing on the presentment was whether her testimony as a whole before the Grand Jury, as disclosed by the reporter's transcript, was so obviously false, obstructive, and contumacious as to constitute contempt. Compare In re Meckley, supra, 3 Cir., 137 F.2d 310, 311. No particular form of procedure is specified for such cases as this. The accused is entitled to be informed of the charges and to have the help of counsel and a reasonable opportunity to prepare a defense. Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767; In re Michael, 3 Cir., 146 F.2d 627, 628. The District Court respected these requirements.

■ The other contentions of the appellant call for no discussion. If her conduct before the Grand Jury constituted contempt, she was not entitled to a jury trial. Her constitutional right to freedom of speech is in no way involved in the case, nor is any question of self-incrimination presented. The right to refuse to testify upon the ground of self-incrimination is personal to the witness, and, if not invoked, is waived. Claiborne v. United States, 8 Cir., 77 F.2d 682, 690, and cases cited. The appellant did not refuse to testify before the Grand Jury. She merely avoided furnishing it with any evidence which was of value or materiality.

■ Our conclusion is that a District Court has power to deal summarily with a witness before a Grand Jury who is guilty of a patent evasion equivalent to a refusal to give any material information. See Loubriel v. United States supra, page 808 of 9 F.2d.

■ The judgment appealed from is affirmed. It is apparent that, to serve any useful purpose, it will have to be enforced promptly. Therefore, the order of this Court admitting the appellant to bail is vacated, and mandate will issue forthwith.

RIDDICK, Circuit Judge (dissenting).

The presentment in this case, after reciting that the Grand Jury was engaged in "an inquiry concerning the violation of certain Federal laws and the identity of the person or persons violating those laws," charged that "it became necessary for said Grand Jury to inquire into and ascertain the facts concerning the acquisition by Blanche A. Howard of between seventeen and eighteen thousand dollars during the years 1944 to 1949, inclusive, and the name of the person from whom Blanche A. Howard acquired the said sum of money," and "that the said Blanche A. Howard, in answer to questions propounded to her, fails and refuses to truthfully tell where she got the $18,000 in cash * * * or to truthfully tell the name of the person from whom she received said $18,000."

The remainder of the presentment contains a detailed recital of information in the possession of the Grand Jury and of the testimony of respondent before the Grand Jury, ostensibly made for the purpose of substantiating the charge of the Grand Jury that Blanche A. Howard was guilty of perjury in testifying that she received the seventeen or eighteen thousand dollars from one Jack Griffin alias Jack Gregory during the years 1932 to 1934. The presentment, having charged respondent with perjury in the respects stated, describes this alleged perjury as "obstructive, evasive, perjurious and contumacious," which, of course, it was if the charge of the presentment is true. But this characterization of respondent's testimony does not change the fact that the only charge of the presentment is that Blanche A. Howard was guilty of the crime of perjury.

Obviously, the presentment was laboriously prepared with a view to escaping the rule announced by the Supreme Court in Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333, and In re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30, which is that a witness may not be punished for contempt for perjury alone under section 268 of the Judicial Code,

and that there "must be added to the essential elements of perjury under the general law the further element of obstruction to the Court in the performance of its duty." The only element of obstruction charged in the presentment and found by the court is the alleged perjury of respondent in her testimony concerning the identity of the person from whom she received the seventeen or eighteen thousand dollars. In its finding the court followed the pattern set and borrowed the descriptive language used by the Grand Jury in the presentment. I think the effort to escape the rule in the Hudgings and Michael cases is as futile as it is obvious. I dissent.