Lowell W. RICHARDSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16301.

United States Court of Appeals
Eighth Circuit.

Dec. 29, 1959.

H. K. Wangelin, Byron Kearby, Poplar Bluff, Mo., for appellant.

Harry Richards, U. S. Atty., Robert E. Brauer, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the defendant Lowell W. Richardson from final judgment of conviction of criminal contempt and the resulting sentence of fifteen months imprisonment. The court has jurisdiction to consider this appeal. 28 U.S.C.A. § 1291.

Application was filed in the trial court by the United States Attorney, pursuant to Rule 42(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., for an order directed to the defendant requiring him to show cause why he should not be adjudged in criminal contempt and be punished therefor. Appropriate order to show cause was entered and served upon the defendant together with a copy of the application and a transcript of defendant's testimony before the Grand Jury. Defendant filed answer and appeared with counsel at a hearing held on the contempt citation on July 27, 1959, and was afforded the full opportunity to be heard.

The application filed by the United States attorney in all respects conformed to the requirements of Rule 42(b). Among other things the application asserted that defendant pursuant to a subpoena appeared on May 25, 1959, before a duly constituted grand jury for the Eastern District of Missouri which was investigating his affairs. The application sets out in some detail the answers given by the defendant to questions concerning the disposition of $14,850 in cash which defendant admitted was in his possession on July 27, 1958. The defendant's answers were in substance to the effect that the $14,850 disappeared from his home and that he had no idea what had become of the money. The transcript of defendant's testimony before the grand jury attached to the application set out defendant's testimony in full. Fair examples of the many evasive answers given the grand jury by the defendant are:

"Q. But you still can't tell the grand jury what happened to the $14,850? A. No, sir I sure can't.

\* \* \* \* \* \*

"Q. Mr. Richardson, I want to caution you that your testimony in that respect borders on contempnacious [sic] conduct, and if the grand jury so sees fit, it will initiate a contempt proceedings against you before the District Court downstairs on the third floor, and I want you to reconsider your testimony in that respect. A. Sir, I mean if I could tell these folks where the money is, I would be glad to.

"Q. You don't know where $14,-850 in cash money went between June 3rd and August 2nd of 1958? A. No, sir, I had a lot of money in my desk and it disappeared. Now, where it went I don't know."

The United States Attorney in his application states:

"That the giving of each and every one of the answers, as set out hereinabove, said answers, and each and every one of them, being beyond a reasonable doubt false, evasive, contumacious, and obstructive of the Grand Jury and of its inquiry, and of This Court and of the administration of justice, constitutes criminal contempt; and that said criminal contempt is summarily punishable by

this Court pursuant to and in accordance with the provisions of Section 401, Title 18, U.S.C.A."

The defendant in his answer admitted the factual allegations of the application except:

"* * * that he denies that each and every one of the answers given by said respondent before said Grand Jury was beyond a reasonable doubt false, evasive, contumacious and obstructive of the Grand Jury and its inquiry, of this court, and of the administration of justice."

In the contempt hearing the government offered in evidence the transcript of defendant's testimony before the grand jury and the first two paragraphs of defendant's answer wherein defendant admitted the factual allegations of the application. The only evidence offered by defendant was the complete answer which he had filed.

The court found that the contempt application was filed by the United States Attorney for the Eastern District of Missouri, that defendant had appeared before a properly convened grand jury for said District pursuant to a subpoena and that the application and attached transcript correctly reflect the testimony given before the grand jury by the defendant. The court in its conclusions of law states:

"2. Respondent's testimony as is incorporated in paragraph 5 of the Findings of Fact, when considered in light of all of the evidence adduced at the hearing, and in light of all of the evidence elicited from the respondent before the Grand Jury on May 25, 1959, is false beyond a reasonable doubt, and such false testimony is, beyond a reasonable doubt, obstructive, evasive, perjurous [sic] and contumacious; and that said respondent has, and is, deliberately, wilfully and contumaciously obstructing the investigation of the Grand Jury into the matters into which it was inquiring on May 25, 1959.

"3. That said respondent, Lowell W. Richardson has wilfully, deliberately, and contumaciously obstructed the processes of this Court in giving the said answers, as they are incorporated in paragraph 5 of the Findings of Fact, which said answers were subterfuges and falsities instead of truths; in blocking the Grand Jury's search for the truth by answering the series of questions propounded to ascertain the disposition of sums of money in cash, totaling $14,850 between July 27 and July 28, 1958, and August 2, 1958, by testifying that that money just disappeared, and he did not know where it went; and in otherwise failing and refusing truthfully to answer those questions propounded to him in the proceedings before the Grand Jury.

"4. That the giving of said obstructive, evasive, perjurous [sic] and contumacious answers constitutes a criminal contempt of this Court.

"5. That this Court has the power to punish such criminal contempt under and by virtue of Section 401, Title 18, U.S.C.A."

Judgment was thereupon entered finding the defendant guilty of criminal contempt and sentencing him to fifteen months imprisonment.

Defendant in his first brief point asserts that in a criminal contempt proceeding defendant is presumed innocent and must be proven guilty beyond a reasonable doubt, citing Nilva v. United States, 8 Cir., 227 F.2d 74. The government concedes that it has such a burden and claims that the evidence fully supports the trial court's conclusion that the defendant's Grand Jury testimony is false, obstructive and contumacious beyond a reasonable doubt.

Defendant's second and last brief point reads:

"In criminal contempt proceedings by government, government's case must be independently established to

some extent, before burden of proof may be shifted to defendant, and there must be manifest disparity in convenience of proof and opportunity for knowledge. United States v. Patterson, 2 Cir., 1955, 219 F.2d 659."

The government contends that the cited case is not in point as it involves the failure of defendant to produce corporate records. The cited case and the present case are factually distinguishable. In the books and records cases it is well established that it is entirely proper to require the government to produce some evidence which would support a finding that records were available to the witness.

■ The government contends that in criminal contempt cases based on false and obstructive testimony the only test is whether "on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the questions at all." This is the test laid down by Judge Learned Hand in United States v. Appel, D.C., 211 F. 495, at page 496, and such a test has been generally followed by the Federal courts. Collins v. United States, 9 Cir., 269 F.2d 745; Howard v. United States, 8 Cir., 182 F.2d 908, vacated and remanded as moot, 340 U.S. 898, 71 S.Ct. 278, 95 L.Ed. 651.[1] In re Mechly, 3 Cir., 137 F.2d 310; United States v. McGovern, 2 Cir., 60 F.2d 880,

In the Collins case, supra, the test is thus stated [269 F.2d 750]:

" * * * the test is not whether the testimony was perjurious or false but whether without the aid of extrinsic evidence the testimony is 'so plainly inconsistent, so manifestly contradictory, and so conspicuously unbelievable as to make it apparent from the face of the record itself that the witness has deliberately concealed the truth and has given answers which are replies in form only

and which, in substance, are as useless as a complete refusal to answer.' "

■■ As pointed out in the Howard and Collins cases, supra, courts consider the power to punish for criminal contempt as an inroad upon the procedural safeguards of the Bill of Rights. Criminal contempt proceedings are not available as a substitute for a perjury prosecution. In the Collins case, supra, 269 F.2d at page 750, the court aptly states:

"The clear teaching of these cases is that 'the grant of summary contempt power, contained in 18 U.S.C. § 401 is to be grudgingly construed, so that the instances where there is no right to a jury trial will be narrowly restricted to the bedrock cases where concession of this drastic power to the courts is necessary to enable them to preserve their authority and to insure the maintenance of order and decorum in the proceedings before them.' Farese v. United States, 1 Cir., 1954, 209 F.2d 312, 315."

■ Courts have recognized that testimony false and evasive on its face is the equivalent of refusing to testify at all. Refusal to disclose information known to a witness by evasive answers can be as obstructive of justice as an outright refusal to testify.

"It is indeed impossible logically to distinguish between the case of a downright refusal to testify and that of evasion by obvious subterfuge and mere formal compliance." United States v. Appel, supra, 211 F. 495.

"A wily witness who avoids the danger of a blunt refusal to answer by mere lip service to his duty and conceals the truth by the use of words may be as obstructive as his fellow of less mental agility who simply says nothing. When the answers of a witness amount to the

---

1. We do not believe the action taken by the Supreme Court in the Howard case in any way impairs the weight to be given our decision in that case. The Howard case involved a civil contempt proceed-

ing. By the time the appeal was considered by the Supreme Court, the Grand Jury had been discharged. The Supreme Court did not reach the consideration of the Howard case on the merits.

crime of perjury, the offender may be guilty of contempt, provided there is also some obstruction of justice in addition to the necessary elements of that crime. * * *

"Our conclusion is that a District Court has power to deal summarily with a witness before a Grand Jury who is guilty of a patent evasion equivalent to a refusal to give any material information." Howard v. United States, supra, 182 F.2d 913, 915.

In the Howard, McGovern and Appel cases the court found that the witnesses had intentionally avoided making reasonable or plausible answers in explanation of the disposition of a substantial accumulation of cash and that such conduct obstructed the administration of justice.

■ A court is not compelled to believe the testimony or explanation of a witness. In Lopiparo v. United States, 8 Cir., 216 F.2d 87, 92, defendant was convicted of contempt for failure to produce books of the corporation of which he was president. Defendant made the claim that he had tried without success to locate the records subpoenaed. We recognized that one charged with contempt may make a complete defense by showing inability to comply. We quoted extensively from United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884, including the following:

"On the other hand, persons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned."

We also said:

"The District Court did not believe and was not compelled to believe the testimony of the appellant that he was unable to find the books he was ordered to produce. The court was the judge of the appellant's credibility and the weight of his evidence. The appellant's self-interest was obvious. His defense was one easily fabricated and almost impossible to disprove."

The Supreme Court in affirming a contempt conviction for failure to produce subpoenaed records in Nilva v. United States, 352 U.S. 385, at page 395, 77 S.Ct. 431, at page 437, 1 L.Ed.2d 415, states:

"However, his protestations of good faith were subject to appraisal by the court that heard them. It was the judge of his credibility and of the weight to be given to his testimony. Lopiparo v. United States, 8 Cir., 216 F.2d 87, 91. In our view, the trial court had a sufficient basis for concluding that petitioner intentionally, and without 'adequate excuse,' defied the court."

We now look to the record in this case in light of the legal principles just stated for the purpose of determining whether the court was justified in finding the defendant guilty of criminal contempt. The basic facts are undisputed. Defendant is a high school graduate. He had managed various business concerns including a bottling works, a laundry, and has also been engaged in the insurance business. In 1958 he decided to enter the ready to wear clothing business at Poplar Bluff, Missouri. At that time his assets consisted of $10,000 in cash and bank deposits and a home valued at $10,000. He opened his clothing store on June 6, 1958, and closed it about July 17, 1958. He purchased a $30,000 stock of merchandise and at no time paid any part

of the purchase price of the merchandise. The business was unsuccessful from the start. After the first week he drastically marked down the price of the merchandise to considerably less than cost. At the time he closed the store he had liquidated practically all the stock and realized approximately $8,000 therefor which proceeds he took home in the form of cash.

Title to defendant's home which had been in the defendant was on May 23, 1958, transferred to defendant and his wife as tenants in entirety. On June 30, 1958, defendant borrowed $4,950 from his mother by mortgaging the home and obtained the proceeds of the loan in cash, which cash he took to his home. About June 3, 1958, he withdrew $5,200 from his bank deposit and likewise took this cash home. Defendant states he paid some salaries, advertising and miscellaneous expenses out of the aforesaid cash accumulation but concedes that he had approximately $14,850 in cash at his home when he closed his store on or about July 17, 1958. This cash was kept in an unlocked drawer in defendant's living room. It was still there when defendant returned from a ten day Florida vacation trip about July 27, 1958. Defendant's testimony is that when he looked for the money on August 2, 1958, it had disappeared. Defendant repeatedly testified that he had no idea what had become of the money. He was not a gambling man and had not dissipated the money or used it for any purpose.

Defendant testified that he was advised by the other members of his household consisting of his wife and thirteen year old daughter that they had nothing to do with the disappearance of the money and he believed them. He did not report his alleged loss to the police or to anyone else. He discovered no evidence of any forced entry into his premises or of robbery.

While defendant professed that he had accumulated the $14,850 in cash to meet his obligations and admitted that he was pressed for payment by his creditors, he concedes that he did nothing by way of paying or compromising his debts at any time before the alleged disappearance of the money. Defendant became aware shortly after opening his store that this business venture would prove a failure and that he would be unable to meet the obligations which he had contracted. On August 2, 1958, which is the date on which he discovered that the money had disappeared, he wrote his creditors advising them that he was so broke he could not pay court costs. Involuntary bankruptcy proceedings were commenced against the defendant on August 18, 1958.

Under the circumstances disclosed by defendant's own testimony, such as his large cash hoard, his encumbrance of his home, his conversion of his assets to cash and placing them in a place where they would be difficult to reach, his substantial obligations which he was unable to meet, and his failure to report the loss to the police or anyone else; the trial court was fully justified in finding beyond a reasonable doubt that the defendant was not telling the truth when he testified that he had no knowledge as to what had become of his cash hoard and in further finding that defendant's refusal to furnish such information was obstructive of justice and contumacious.

In conclusion, it should be stated that we are fully aware of the limitations in the power of a federal court to punish a contempt of its authority, as outlined by the Supreme Court in In re Michael, 326 U.S. 224, 227–228, 66 S.Ct. 78, 90 L.Ed. 30; Nye v. United States, 313 U.S. 33, 47, 61 S.Ct. 810, 85 L.Ed. 1172; Clark v. United States, 289 U.S. 1, 11–12, 53 S.Ct. 465, 77 L.Ed. 993; Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656. We are convinced, however, that the defendant's testimony, here before the grand jury, as the trial court has found, not only failed to embrace the truth, but was obstructive of the administration of justice within the meaning of 18 U.S.C.A. § 401, and that the conviction of the defendant of criminal contempt must stand.

The judgment appealed from is affirmed.